BUSH BROS. & COMPANY *v.* ROSCOE WILLIAMS.

(*Knoxville,* September Term, 1954.)

Opinion filed November 16, 1954.

E. BRUCE FOSTER, and FRANTZ, McCONNELL & SEYMOUR, of Counsel, all of Knoxville, for plaintiff in error.

EDWARD F. HURD, of Newport, for defendant in error.

MR. JUSTICE SWEPSTON delivered the opinion of the Court.

This is a compensation case brought under the Workmen's Compensation Act of Tennessee, Code. Section 6851 et seq. The judgment of the Trial Court was. in favor of the petitioner, the Court found that he was permanently and totally disabled and fixed his compensation in accordance with the statute, Section 6878(c). The employer has appealed and assigned error to the effect that there is no evidence to support the judgment.

Under this assignment it is insisted that there is no medical testimony that the plaintiff is disabled and no medical testimony that the disability could have resulted from the accident, nor that it is permanent. An elaborate argument and brief are submitted on the point that when a case involves a hidden or latent physical condition discoverable only by an expert medical man, the Court must depend upon his expert opinion.

With deference to counsel for appellant, we do not think that we get to that question.

The employee testified that he went to work for the Company in the latter part of May 1952, and on or about the 16th. day of June, 1952, he sustained an injury to his back while lifting a heavy piece of pipe; that he imme-

diately felt a sharp pain in the lower part of his back and became sick and blind; he stated to the men working along with him that he had hurt his back and they told him to go to the packing house of the cannery and lie down and somebody would take him to the doctor; that a man, probably the foreman, whom petitioner knew as Bush, took him to the hospital where he was examined by Dr. Valentine. After describing the treatment that was administered to him by Dr. Valentine, and later by a specialist, Dr. Brashear, the claimant testified that he had been under the care of a doctor ever since he was hurt, that he is disabled at the present time; that he has pains in his back and in the back of his legs and the back of his head, the latter when he stoops over, and that he can't walk well; that he is not able to do any work that requires physical labor. It also is undisputed that he is a common laborer and has never been qualified to do anything except physical labor. Witness Smith, a neighbor of claimant, testified that he had observed claimant after the accident in June 1952, and that he had not walked normally since the date of the accident; that he had helped claimant with his crops on the farm; that he had known claimant for approximately 16 years and he is a man of good character and entitled to credit on his oath.

Witness Simmonds, another neighbor, testified likewise.

Witness Freeman, another neighbor, testified he had known claimant for 20 years and had not seen him do any work since the accident; that he had helped cut claimant's tobacco and done plowing for him; he also gave him a good character.

Dr. Valentine testified that he first saw claimant on June 16, 1952, which was the date of the accident; that

claimant had quite a bit of muscle spasm and was suffering from a lumbosacral strain; he put him in the hospital on June 23rd, and treated him by administering diathermy and traction and codeine for pain; claimant remained in the hospital until the first of July, and was again hospitalized on July 9th, and remained for three days when he still had muscle spasm; that since he was not responding to treatment he referred him to Dr. Brashear.

Dr. Brashear, an orthopedic specialist, testified by deposition July 31, 1953, that he examined claimant on July 1, 1952; that he had minimal muscle spasm in lumbar region; that X-ray pictures showed a congenital anomaly of the fascia above and below the fifth lumbar vertebra; that he had a sprained back which was in all probability a mechanically weak back to start with, or he wouldn't have had this little abnormality in the X-ray picture; that on October 21, 1952, he had no definite opinion as to the amount of claimant's disability, but it was his opinion that a man with a chronic back strain who still has to wear a brace to go back to work has a minimal disability and that he thought claimant could go back and do his normal work by wearing a brace; that he had not seen claimant since October 21, 1952. That after putting through the usual tests, he found no evidence of a ruptured disc; that an X ray will not ordinarily disclose it nor are there any absolute tests.

Dr. Valentine testified that on August 1, 1953, claimant still had some muscle spasm over the second and third lumbar spinous process and that this muscle spasm was at the same place where it was when he last saw claimant a little over a year before the last examination. In response to the question, "What other objective symptoms did you find at the time you examined him last Satur-

day?" The doctor replied: "Straight leg raising to about 75 degrees on each side caused considerable pain."

"Q. Was that objective or subjective? A. I would say it was objective.

"Q. What evidence of that pain did you see that he didn't tell you about? A. He had muscle spasm.

"Q. And that muscle spasm you think he had would account for the pain on straight leg raising? A. Yes.

"Q. What other objective symptoms did you find, Doctor? A. Also flexure of the thighs there was some pain. That would be stretching of the muscles.

"Q. Was that objective? A. That was objective." Again:

"Q. Doctor, do you have an opinion as to whether or not this man is able to do his normal work, and if so, what? A. At the present time I don't think he is—I think he has an acute back at the present time."

This was about a month before the trial on September 14, 1953.

The evidence further shows that he was able-bodied and did farm and other heavy work beforehand which he has not been able to do since then, that his manner of walking is affected since the injury and continues to be so, and there is no evidence that the congenital anomaly of the fascia above and below the fifth lumbar vertebra have any connection with the injury other than the doctor's statement that it might have made a predisposition to a weak back; this latter, however, would not be any reason for denying him compensation for the injury suffered.

We think there is substantial material evidence of both causation and disability. It is insisted that there is no evidence of permanency. This probably arises out

of the testimony of the doctors that they thought the man was able to go back to work by wearing a brace.

The Trial Judge, however, was not bound to accept the statements of the doctors in this regard; he was entitled to determine from all of the evidence in the case, both expert and non-expert, the extent of the disability, that is whether partial or permanent, and if partial, what amount. *Crane Enamel Co.* v. *Jamison,* 188 Tenn. 211, 218, 217 S. W. (2d) 945; *Lunsford* v. *A. C. Lawrence Leather Co.,* 189 Tenn. 293, 298, 225 S. W. (2d) 66.

It is further to be noted that the petition did not allege claimant had a ruptured disc; it simply alleged that he injured his back and was permanently and totally disabled. We think there is material evidence to support the finding that he was.

The assignment is overruled and the judgment of the lower Court affirmed with costs against the appellant. The cause is remanded to the lower Court for the enforcement of the judgment below.