CONSOLIDATION COAL COMPANY and Charles Worley, Treasurer of the State of Tennessee, Plaintiff in Error,

*v.*

HOWARD BRYSON PRIDE, Defendant in Error.

452 S.W.2d 349.

(*Knoxville,* September Term, 1969.)

Opinion filed February 16, 1970.

Petition to Rehear Denied April 6, 1970.

190

W. Keith McCord, Egerton, McAfee, Armistead & Davis, Knoxville, for plaintiff in error.

O'Neil, Parker, Williamson & Jarvis, Knoxville, for defendant in error.

Mr. Justice Creson delivered the opinion of the Court.

This is an appeal, in a workmen's compensation case, from the Chancery Court of Anderson County, Tennessee. That court awarded the employee, Howard Bryson Pride, workmen's compensation benefits as against employer Consolidation Coal Company, for 85% permanent partial disability to the body as a whole, due to silicosis, an occupational disease. An additional 15% permanent partial disability was awarded as against the Second Injury Fund, due to a back injury which Pride had suffered earlier, which, together with the occupational disease, rendered him totally and permanently disabled. The Second Injury Fund has not appealed the award rendered against it, thus our consideration of this record is limited to the 85% award as against Consolidation Coal Company.

Hereinafter, the parties will be referred to as follows: The plaintiff in error, Consolidation Coal Company, as defendant; and defendant in error, Howard Bryson Pride, as petitioner.

On March 12, 1968, petitioner filed his suit seeking workmen's compensation benefits for silicosis. Claim was also made against the Second Injury Fund for benefits due to a back injury.

On April 4, 1968, defendant filed its answer in which it offered the following defenses: (1) It is denied that petitioner was suffering from silicosis, (2) written notice was not given defendant as required under T.C.A. sec. 50-1107, and (3) even if petitioner does have an occupational disease, the claim is barred by the one year statute of limitations.

On April 9, 1969, a judgment was entered in favor of petitioner, awarding him 85% permanent partial disability to the body as a whole.

Defendant made timely motion for new trial, which was overruled. An appeal was then perfected to this Court.

The assignments of error filed in this Court are as follows:

1. The Trial Court erred in ruling that the petitioner suffered 85% disability to the body as a whole as a result of an occupational disease. This is contrary to the undisputed facts and there is no evidence to support said conclusion.

2. The judgment is contrary to the undisputed evidence and the findings of the Court are not supported by any material or substantive evidence.

3. The Trial Court erred in ruling that petitioner's suit was not barred by the Statute of Limitations when the record and proof clearly and positively shows that petitioner's suit was filed more than one year after the beginning of disability and the compensable injury and disease became apparent, pursuant to T.C.A. 50-1105 and 50-1108.

4. The Trial Court erred in ruling that the petitioner's failure to give notice to the defendant of his occupational disease within thirty (30) days after its first distinct manifestation did not bar petitioner's claim.

Petitioner was 56 years of age at the inception of this suit and has a high school education. He had been an underground coal miner for 37 years. He had worked for Pocahontas Fuel Company, defendant's predecessor, for 13 years. In 1954, defendant purchased that company, and petitioner worked for defendant, Consolidation, for 13 more years until his termination in November, 1967.

For the past 26 years, petitioner's capacity with defendant has been that of section foreman. By education and experience, the trial court found that petitioner is qualified only to do manual labor.

Petitioner testified that about two or three months prior to his termination date in November, 1967, he noticed a shortness of breath, but that it did not affect his work in any way.

On January 19, 1968, Dr. William K. Swann, a specialist in thoracic medicine and surgery, examined petitioner and advised him that he had rock dust on his lungs, or silicosis. At this time, petitioner was hospitalized for treatment. Dr. Swann subsequently saw him on four occasions.

Dr. Swann testified that X-rays revealed petitioner has nodular fibrosis in his lungs, which he believes to be silicosis; that he has 'moderately severe emphysema,'' which is secondary to his dust disease; that his breathing capacity is reduced to 50 to 60 per cent of the normal value, which he termed ''moderate''.

As to petitioner's ability to be employed as a coal miner or for work involving physical exertion, Dr. Swann stated:

''He's not employable as a coal miner. No doctor would recommend that he go back to work underground and no physician would recommend that he work where he would be exposed to dust or fumes. As far as any other occupation is concerned, I think there are a number of things that he could do, but if he tried to do a job that would entail any appreciable physical exertion or manual labor, he would have difficulty at it. He would be short of breath.''

As to petitioner's ability to perform supervisory duties as a coal miner, Dr. Swann testified that from a physical standpoint, he could do so, but that he would not recommend it, in order to avoid further exposure. When asked to state petitioner's disability in percentage terms, Dr. Swann replied:

"A. As you well know, I don't like to make that kind of an estimate, because it entails such a large amount of guesswork, and I won't do it unless I'm ordered to by the Court. I tell you what I found wrong with the man and my opinion about what he's able to do, but as far as giving you a numerical percentage, I don't think that it's worthwhile."

Defendant, in its first two assignments of error, argues that, while petitioner has X-ray evidence of an occupational disease, it did not result in any disability. It is further argued that the medical testimony was couched, not in terms of degree and extent of disability, but in terms that petitioner should not go back in the mines and be further exposed to dust, irrespective of extent of disability.

From this, petitioner insists that the trial court did not base its findings of fact and opinion upon evidence "having probative value," and that it overlooked undisputed evidence.

■■ It is our opinion that the medical testimony to the effect that petitioner has silicosis, emphysema, and a substantial reduction in breathing capacity, is evidence having probative value and thus supports the trial court's finding. Finding such, it is not this Court's function to further weigh the evidence, or to give particular attention to isolated fragments of evidence which

might tend to contradict the finding of the lower court. See *Armstrong v. Spears* (1965), 216 Tenn. 643, 393 S.W. 2d 729; *Reedy v. Mid-State Baptist Hospital* (1962), 210 Tenn. 398, 359 S.W.2d 822.

It is also the well-established rule that in determining the extent of disability, the trial judge is not bound to accept the testimony of any witness. He is entitled to determine from all the evidence the extent of disability. *Lunsford v. A. C. Lawrence Leather Co.* (1949), 189 Tenn. 293, 225 S.W.2d 66; *Bush Bros. & Co. v. Williams* (1954), 197 Tenn. 334, 273 S.W.2d 137.

It is also pertinent to note that, at defendant's request, petitioner submitted himself to an examination and test by a doctor of defendant's choice. The defendant did not produce this doctor as a witness, nor did it make any effort to bring his findings before the court.

Assignments of error one and two must be overruled.

Petitioner's third assignment of error urges that petitioner's suit is barred by the statute of limitations in that the suit was filed more than one year after the beginning of disability became apparent.

T.C.A. sec. 50-1108 provides:

"The right to compensation for occupational disease shall be forever barred unless suit therefor is commenced within one (1) year after the beginning of the incapacity for work resulting from an occupational disease * * *."

The fourth assignment of error insists that the trial court erred in ruling that petitioner gave notice of his occupational disease to defendant within thirty days after its first distinct manifestation, as required in T.C.A. sec. 50-1107.

These two assignments will be considered together.

■ The rule with respect to the time when the statute of limitations begins to run is that time when the employee has knowledge, actual or constructive, that he has an occupational disease which injuriously affects his capacity to work to a degree amounting to a compensable disability. *Adams v. American Zinc Co.* (1959), 205 Tenn. 189, 326 S.W.2d 425. The trial court found that time to be in February, 1968, when Dr. Swann informed petitioner of his diagnosis. Notice was given to defendant on March 11, 1968, and suit was filed on March 12, 1968.

■ Defendant insists that petitioner knew before he went to Dr. Swann in January, 1968, that he was seeking medical attention in connection with an occupational disease. Since notice was not given until March 11, 1968, it is argued that notice was not given within thirty days, as required in T.C.A. sec. 50-1107. As stated above, the trial court found that petitioner first had knowledge of the existence of an occupational disease after he was so advised by Dr. Swann. We agree with that finding and therefore overrule assignments three and four.

In this connection, it is also argued that the alleged failure to give proper notice and the failure to comply with T.C.A. sec. 50-1004 released defendant from any liability for medical expenses. Petitioner, upon being advised that he was suffering from an occupational disease, notified defendant of his intention to claim Workmen's Compensation benefits. Counsel for defendant advised petitioner's counsel, by letter, dated March 28, 1968, that pursuant to T.C.A. sec. 50-1004, defendant was designating three physicians with whom petitioner should consult for purposes of treatment.

While petitioner did submit to an examination by a doctor designated by defendant, all other medical expenses for treatment were incurred while under the care of Dr. Swann.

T.C.A. sec. 50-1004 provides that the employer shall furnish within certain limitations

"* * * such medical and surgical treatment, medicine, medical and surgical supplies, crutches, artificial members, and other apparatus, such nursing services as ordered by the attending physician and hospitalization, including such dental work made reasonably necessary by accident as herein defined, as may be reasonably required. * * * The injured employee shall accept the same; provided, that the employer shall designate a group of three (3) or more reputable physicians or surgeons not associated together in practice if available in that community from which the injured employee shall have the privilege of selecting the operating surgeon or the attending physician; * * *."

In the case of *Procter & Gamble Defense Corp. v. West* (1958), 203 Tenn. 138, 310 S.W.2d 175, this Court said:

"If this statute means what it says then the employer is to 'furnish' and the employee 'shall accept the same.' This language makes it clear that the intent of the statute was for the employee to certainly do not less than consult his employer before incurring the expenses called for by that statute if the employee expects the employer to pay for it. The opposite would seem to be against public policy. Read *Irwin v. Fulton Sylphon Co.*, 179 Tenn. 346, 166 S.W.2d 610."

This particular language was again alluded to in *Rice Bottling Co. v. Humphreys* (1963), 213 Tenn. 8, 372 S.W.

2d 170. There, the employees suffered back injury and submitted to an examination by the employer's doctor, who, in turn, referred him to an orthopedic surgeon. This doctor, after examination, could find nothing wrong with the employee. The employee, without consulting his employer, then went to a chiropractor, who treated him until the date of the trial. Although the employee was awarded benefits for 40% permanent partial disability, he was denied recovery of medical expenses paid to the chiropractor, the Court concluding that he was not justified in obtaining further medical services, without consulting with his employer, yet expecting employer to pay for same.

Petitioner argues that he was justified in being treated by a doctor of his choice since defendant, in its letter to petitioner, only offered to pay for the services of these doctors contingent upon the outcome of petitioner's claim for benefits.

■ We do not think such an interpretation is justified. The essence of defendant's letter was that by designating three doctors, (1) it was not admitting liability for Workmen's Compensation benefits and (2) it would not be liable for medical expenses paid to any doctor other than those designated.

■ In any event, the employer is, by statute liable for the services of the physician making the initial examination at the instance of the employer. T.C.A. sec. 50-1004 provides:

"The employer shall pay for the services of the physician making the examination at the instance of the employer. And in case of dispute as to the injury, the court may, at the instance of either party, or on its

own, appoint a neutral physician of good standing and ability to make an examination of the injured person and report his findings to the court, the expense of which examination shall be borne equally by the parties."

It is our view that petitioner had a duty to consult with one of the designated physicians, at least for the initial examination. If thereafter unsatisfied with that physician's findings, petitioner may, generally speaking, (1) move the court to appoint a neutral physician, whose expense would be borne equally by the parties, (2) consult with his employer and make other arrangements suitable to both parties, or (3) go to a physician of his own choice, without consulting with the employer, and thus be liable for such services.

It follows that the decree of the Chancellor awarding petitioner 85% permanent partial disability is affirmed; while the award to petitioner of medical expenses of $676.92 is reversed. Costs of this appeal are assessed against the defendant, Consolidation Coal Company.

DYER, CHIEF JUSTICE, HUMPHREYS and McCANLESS, JUSTICES, and JENKINS, SPECIAL JUSTICE, concur.

### OPINION ON PETITION TO REHEAR

We have been presented with a petition to rehear directed to the disallowance of medical expenses. It is insisted that in an occupational disease case the employee is entitled to recover for medical expenses incident to the disagnosis and treatment of the disease before the thirty day notice is given to the employer. *Charnes v. Burk* (1959), 205 Tenn. 371, 326 S.W.2d 657 is relied upon.

█ Under the circumstances as presented in this case, that decision has no application. The moment petitioner became aware that he was suffering from an occupational disease, he was then under a duty to consult with his employer, if it was medically feasible to do so, before incurring additional medical expenses.

In this situation, this petition to rehear does not meet the test of Rule 32 of this Court. We are content to stand on our original opinion.

The petition is denied.

DYER, CHIEF JUSTICE, HUMPHREYS and McCANLESS, JUSTICES, and JENKINS, SPECIAL JUSTICE, concur.