Conda **PHILLIPS**

v.

**CONSOLIDATION COAL COMPANY.**

**Civ. A. No. 6996.**

United States District Court,
E. D. Tennessee, N. D.
July 27, 1970.

**1016**

Paul E. Parker, O'Neil, Parker, Williamson & Jarvis, Knoxville, Tenn., for plaintiff.

John A. Walker, Jr., Egerton, McAfee, Armistead & Davis, Knoxville, Tenn., for defendant.

## OPINION

ROBERT L. TAYLOR, District Judge.

Plaintiff is fifty-six years old and has a second grade education. He started to work with Pocahontas Fuel Company, defendant's predecessor, in 1936 and continued to work until defendant's mine closed in March, 1970 except for a term spent in military service from 1942 to 1944.

The issues raised in this case are similar to those raised in the Lowe and Bunch cases, one of which is, does the one-year statute of limitations or the 30-day notice provision of the Tennessee Workmen's Compensation Law bar plaintiff's claim? The parties agree that if plaintiff had notice of his occupational disease, or by the exercise of ordinary care, should have had notice of his occupational disease more than one year prior to the date he instituted his suit, his suit is barred. Also, if he had notice of his occupational disease or by the exercise of ordinary care should have known of his occupational disease and failed to give his employer notice within 30 days after such notice came to him, he is barred.

Mr. Phillips was suffering from lung trouble seven or eight years before he started the present suit, but he continued to work at least five or six days a week until the mine closed.

In 1964, plaintiff experienced difficulty in breathing. His physician, Dr. Waterman, referred him to Dr. Smith. Dr. Smith treated plaintiff and referred him to Dr. Swann, a local thoracic specialist. Dr. Swann first saw plaintiff on March 4, 1964 and hospitalized him at that time. Dr. Swann diagnosed bronchitis and questionable occupational lung disease. His associate, Dr. Bradsher, wrote I. W. Sampson, defendant's Safety Director, on July 13, 1964 and on August 10, 1964. He informed Mr. Sampson that plaintiff had been treated since March of 1964 and that the medical findings were pulmonary emphysema, pulmonary fibrosis, recurrent bronchitis and associated bronchospasm. In his opinion, it would be to the employee's advantage if he could work in some phase of the mining operations where there would be less exposure to dust. Mr. Phillips had developed changes in his lungs which although not severe, required as much protection as possible to prevent any progression of the exhibited fibrotic changes.

Mr. Sampson testified that he found a job for plaintiff above ground in 1964. Mr. McCoy, defendant's chief electrician, stated that plaintiff had worked as a mechanic outside of the mine. Mr. Farmer, a witness for defendant, corroborated this line of testimony.

Plaintiff still had physical difficulties even though he worked above ground. Dr. Swann has continued to treat him since 1964. At one time Dr. Swann admitted him to St. Mary's Hospital in Knoxville because of head and ear trouble. From his difficulty in hearing counsel or the Court while testifying, this hearing difficulty apparently still plagues him. Dr. Waterman has admitted him to the hospital on two occasions.

The Court is satisfied that plaintiff knew he was sick in 1964, but it is likewise satisfied that the doctors did not tell him what was wrong. In 1964, Dr. Swann had advised plaintiff not to work in underground coal mines. Although

he admits that he was plaintiff's treating physician at this time, he could not say whether plaintiff was advised that he was suffering from an ocupational disease. Hospital records prepared while Dr. Swann was treating plaintiff show an occupational coal dust disease. Plaintiff stated that Mr. Hatfield, defendant's Assistant Superintendent, had asked one doctor what was wrong and the doctor did not tell Hatfield. In January, 1970, plaintiff suffered increased difficulty in breathing, but he continued to work. Dr. Waterman treated him, but refused to give him a report on his condition. After the mine closed in March, 1970, plaintiff was told in April, 1970 that he was suffering from an occupational disease. The Court finds that plaintiff first knew of his occupational disease sometime in April, 1970. This finding is based upon the positive swearing of plaintiff that no doctor had so advised him until April, 1970.

Defendant relies on the decision in the case of Jones v. Lenoir City Car Works, 216 Tenn. 351, 392 S.W.2d 671, in support of its contention that plaintiff's action is barred by the one-year statute of limitations. The facts in that case were somewhat different from the facts in the present case. The Court in that case quoted at length from the employee's testimony, a portion of which is as follows:

"Q. I see. Then in 1960 Mr. Griffith, the Claim Agent, was telling you then that your medical x-rays and medical examination, had revealed that you had something—either a cavity or something wrong with your lungs—

"A. He said a cavity the first time, and when I went to Knoxville he said it was a spot. And I asked him if it was on my right lung, and he said, yeah, so I figured that might be the right lung because they took so darn many of them x-rays of my right lung, see.

"Q. You were feeling bad, I believe you said back in 1960? And before?

"A. Yeah.

"Q. And when he told you this, that something was wrong with your lungs, you figured then that you had an occupational disease?

"A. Yeah.

"Q. In other words, from this Lenoir Car Works?

"A. Exposure, yeah.

"Q. I see but you continued working until, I believe you said, July what this year?

"A. About July 19, I believe it was.

"Q. But you have been aware of this occupational disease for some length of time?

"A. Well, I thought that was it. That is what he then finally told me. That is all he ever told me."

It was obvious from this testimony, and the Court so stated, that the employee knew that he had silica dust on his right lung which he had known for some four years and that he believed that he had an occupational disease because of the condition in his lungs. The claim agent for the insurance company, Mr. Griffith, suggested that he retire in 1960. The trial court found that the employee was precluded from recovery because he knew of his occupational disease more than one year prior to the institution of his suit. The Supreme Court of Tennessee in holding that there was material evidence to support the findings and conclusions of the trial court said:

"There being material evidence in the record to support the finding by the trier of the facts that petitioner knew, or by the exercise of reasonable caution should have known, that he had an occupational disease which had 'injuriously affected his capacity to work, to a degree amounting to a compensable disability' for more than one year prior to the filing of his petition herein, we must overrule petitioner's assignment of error on this point."

As previously indicated, plaintiff did not know that he suffered with an occupational disease until he was so advised

**1018**

in April, 1970. He filed his suit well within the one year period.

■ While the proof is convincing that plaintiff had no actual knowledge of his disease, there is more difficulty in determining if he possessed sufficient information to put him on notice of an occupational disease. He knew that he had been sick for intervals since 1964 until he stopped work. He knew that his shortness of breath was increasing. He knew that he had suffered a smothering spell of such magnitude that it required him to be taken from work and hospitalized. Under ordinary circumstances, the Court would be inclined to find that plaintiff should have known that he suffered from an occupational disease for a sufficient length of time to bar this suit. However, in view of the plaintiff's background and his second grade education, his belief that his various sick spells were temporary as evidenced by his continued work over so long a period of time and his desire to provide for his family, the Court is of the opinion that he cannot be charged with constructive knowledge of his occupational illness. The Court also notes that defendant had more actual knowledge of plaintiff's illness in 1964 than plaintiff.

■ There is a dispute over the extent of plaintiff's disability. Plaintiff testified that he has smothering spells and cannot walk fast. He can perform a little manual labor. He draws unemployment benefits as do Bunch and Lowe and signed a statement that he was able to work at the time he applied for the unemployment insurance. He coughs and wheezes. He cannot sleep without medication. He is unable to stand smoke or fumes of any type. During weather changes the smothering spells increase. When Dr. Swann last examined plaintiff in June of 1970 he concluded that plaintiff was totally disabled from working in coal mines. In his opinion plaintiff was capable of performing some entirely sedentary job like a night watchman. The medical testimony and plaintiff's appearance while on the witness stand convinces this Court that his dust disease is more advanced than was the dust dis-

ease in the cases of Bunch and Lowe against this same company.

The Court finds that plaintiff suffers with an occupational disease which arose out of and in the course of his employment with the defendant and as a result of which he has sustained a permanent partial disability of 90%. He is entitled to benefits under the Workmen's Compensation Law in this case and in addition thereto the hospital and medical expenses incurred before May 11, 1970, the day that his attorney received notice from defendant's attorney that the defendant had designated three doctors from which he could choose one for treatment.

■ Defendant contends that plaintiff is not entitled to medical and hospitalization expenses and in support thereof relies upon the recent case of Consolidation Coal Company v. Pride, Tenn., 452 S.W.2d 349 (1970). That case may likewise be differentiated from the instant case upon the facts. In that case the Court held on petition to rehear that when petitioner became aware of his occupational disease he was then under the duty to give his employer notice before incurring additional expense. In our case, plaintiff gave the defendant notice that he had incurred this additional expense immediately after he learned that he was suffering with an occupational disease. When he incurred the expense he did not know that he was suffering with an occupational disease and, therefore, was not in a position to make claim against his employer for such expense as he did not know that the trouble with which he was suffering was work-connected and covered by the occupational disease provision of the Tennessee Workmen's Compensation Law.

It is the judgment of this Court that plaintiff is entitled to recover medical and hospital expenses until May 11, 1970, the date that his employer gave his attorney the names of three physicians, any one of which he could select for treatment.

Present order in conformity with this opinion.