Jerry Wayne MAYES, Appellee,

v.

GENESCO, INC., and Kingsboro Textile Co., Appellants.

Supreme Court of Tennessee.

June 17, 1974.

William N. Ozier, Bass, Berry & Sims, Nashville, for appellants.

Tunnell & Meredith, Oak Ridge, James Cornelius Summers, Nashville, for appellee.

## OPINION

ERBY L. JENKINS, Special Justice.

This is a workmen's compensation case, the plaintiff, Jerry Wayne Mayes, having brought suit in the Chancery Court of Davidson County for workmen's compensation benefits. In the Chancery Court the defendant, Genesco, Inc., did not deny that the plaintiff suffered an on-the-job injury, but strongly denied that the plaintiff suffered any permanent disability which would justify compensation.

After a careful review of the facts, the Chancellor held that the plaintiff suffered seventy-five percent permanent partial disability to the body as a whole, and a judgment was entered accordingly. Thereafter, on motion of the plaintiff, the Chancellor awarded the plaintiff a six percent penalty

on the unpaid temporary total disability benefits due.

▆▆▆ The defendant has appealed to this Court. In the first assignment of error, counsel for the defendant insists that the Chancellor erred by finding the plaintiff suffered a permanent disability because there was no medical testimony that the plaintiff sustained a permanent disability. Unquestionably, counsel for the defendant is correct in his assertion that medical testimony is required to establish whether or not a disability is permanent. Minton v. Leonard, 219 Tenn. 642, 412 S. W.2d 886 (1966); Moyers v. Oman Construction Company, Inc., 223 Tenn. 449, 446 S.W.2d 684 (1969). While the medical testimony cited in defendant's brief raised some questions as to whether or not the plaintiff was malingering, this Court cannot reweigh the evidence. Our function is limited to a determination of whether the factual conclusion made by the Trial Judge is supported by material evidence. Despite some remarks unfavorable to the plaintiff's position, the medical testimony established that the plaintiff suffered a permanent disability.

Dr. Fred F. Brown, Jr., testified:

"Q. Dr. Brown, at the time of your last examination did you make an assessment as to the disability of Mr. Hayes?

"A. Not at the time of my last one I don't—Yeah, I did, I guess so. I had done it previously also. I stated in a letter to Attorney Jennings Meredith on April 11, 1973, that in my opinion he had a disability considering the body as a whole somewhere in the range of around 25 percent.

"Q. In your opinion is that a permanent disability?

"A. Yes."

On Cross-examination by counsel for the plaintiff, Dr. Brown further testified:

"Q. Doctor, I note in your letter of April 11 here that you refer to manual labor. What is this man's ability to do manual labor at this time with reference to a disability?

"A. Well, the problem with this disability evaluation is that it does not take into account the person's education or their previous job. I would give the same disability to anybody. I do not believe this boy ought to do manual labor. I think he's got a bad back.

"Q. That's what I was asking.

"A. At all.

"Q. At all?

"A. At all.

"Q. In other words, for this would it be fair to say that he's 100 percent disabled with reference to doing manual labor?

"A. That's my opinion."

In addition, Dr. Don L. Gaines testified that the plaintiff sustained a five to ten percent disability. Thus, we have a wide divergence of medical opinions as to the plaintiff's disability, but the Chancellor's finding is based on material evidence. Therefore, defendant's first assignment of error is overruled.

▆▆▆ In the second assignment of error, defendant argues that the Chancellor erred by not considering the vocational rehabilitation potential of the plaintiff as a factor in assessing the extent of plaintiff's disability. Defendant also argues that where vocational rehabilitation is made available to an injured employee and the employee refuses to accept the retraining, the employee should not be awarded a permanent disability rating until such time as the employee agrees to accept and complete the vocational rehabilitation program available.

Unfortunately, the Workmen's Compensation Act of this State does not contain any reference to vocational rehabilitation.

As Professor Larson states:

"It is too obvious for argument that rehabilitation, where possible, is the most satisfactory disposition of industrial injury cases, from the point of view of the insurer, employer and the public as well as of the claimant. Apart from the incalculable gain to the worker himself, the cost to insurers and employers of permanent disability claims is reduced, . . . . . It is probably no exaggeration to say that in this field lies the greatest single opportunity for significant improvement in the benefits afforded by the Workmen's Compensation system." 2 Larson, Workmen's Compensation, § 62.20.

Notwithstanding the desirability of vocational rehabilitation, this Court cannot without legislative direction decide that vocational rehabilitation is so desirable that disabled workers should be forced into such programs under threat of not receiving their workmen's compensation benefits. Even assuming that this Court could exercise such initiative, coercion of this type would not be desirable without a comprehensive vocational rehabilitation program being available to all disabled workers.

Genesco attempted to prove the vocational rehabilitation potential of the plaintiff through the testimony of Dr. William M. Holbert, a Ph.D. in counseling psychology with a specialty in vocational rehabilitation. Dr. Holbert testified that persons with an injury similar to the injury sustained by the plaintiff can be retrained and employed in various industries.

Attempting to assess potential, whether it be vocational rehabilitation potential, or the potential of any other project is at most speculative. One can only guess that an individual will achieve a desired result because others similarly situated have done so. However, no guarantee can be made. For this reason, we conclude that vocational rehabilitation potential need not be considered by the Trial Court in assessing the extent of the disability.

It is desirable to have the trial courts consider vocational rehabilitation as opposed to considering vocational rehabilitation potential when assessing the extent of an employee's disability. This cannot be accomplished, however, until a procedure is established whereby the court would not have to make its final disability rating until after the employee has completed a rehabilitation program.

■ The record reveals that the Chancellor properly considered such factors as the plaintiff's education and training and his past employment record as a basis for deciding the extent of disability, Fed. Mutual Implement & Hardware Ins. Co. v. Cameron, 220 Tenn. 636, 422 S.W.2d 427 (1967). As the Chancellor noted the plaintiff had only an eighth-grade education and had never performed any jobs other than manual labor. These factors when coupled with the medical testimony are material evidence to support the Chancellor's finding of seventy-five percent permanent partial disability. There being material evidence to support the findings, this Court must affirm the Chancellor's disability rating, Consolidation Coal Co. v. Pride, 224 Tenn. 188, 452 S.W.2d 349 (1970).

■ The record shows that the last voluntary temporary disability payment was made by Genesco on December 13, 1971. After the hearing on October 26, 1973, the Chancellor held that the plaintiff was entitled to temporary total disability payments from the date of the last voluntary payment to the date of the hearing. Acting pursuant to the authority provided in T.C.A. § 50–1005, the Chancellor assessed a six percent penalty on the amount of all unpaid temporary total benefits. The defendant argues that the Chancellor erred in applying T.C.A. § 50–1005 in this case. We do not find that this Statute has heretofore been construed, and thus we are confronted with a new problem.

T.C.A. § 50–1005 provides in pertinent part:

"The total amount of compensation payable under this chapter shall not exceed twenty-five thousand dollars ($25,000) in any case, exclusive of medical, hospital and funeral benefits. Compensation shall be paid promptly, the first payment shall be due and payable within fifteen (15) days after the employer has knowledge of any disability or death, and thereafter compensation shall be paid to the employee or his dependents semi-monthly. Any employer or his insurance carrier who fails to pay compensation as herein provided shall suffer a penalty of six percent (6%) on any unpaid instalments."

It is the defendant's position that the Legislature's choice of the word "penalty" indicates that the Legislature intended to punish the bad faith refusal to make disability payments but in no way intended to impose a penalty if the payments were stopped in good faith. Counsel argues that the defendant acted in good faith in terminating the voluntary payments and no penalty should be imposed.

Counsel for the plaintiff insists that while the Legislature used the word penalty they really meant interest; that is, the six percent is intended as compensation for not having use of the money.

A penalty is, generally speaking, a sanction imposed for some unreasonable or unfair action. Logically, therefore, it should not be applied if the party acts in good faith. Professor Larson says that ". . . generally a failure to pay because of a good faith belief that no payment is due will not warrant a penalty." 3 Larson, Workmen's Compensation, § 83.40.

The courts, as a general rule, do not favor penalties, and this Court finds that if the defendant did not pay the plaintiff as alleged, and that such failure to pay was in good faith, or based on a reasonable judgment or doubt, then the penalty should not be assessed against the defendant, for we interpret the word "penalty" as used in the Statute to mean just that. The words in the Statute "should suffer a penalty" to us implies that the failure to pay must be in bad faith on the part of the defendant and we so hold. To rule otherwise would be to automatically attach a six percent penalty in all cases where the defendant did not pay as provided by this Statute, whether in good or bad faith. Thus, the discretion and judgment of defendant employers and/or their insurance carrier, in making an honest, intelligent and knowledgeable evaluation of claims such as this, would be hampered if not destroyed, and the Workmen's Compensation Act itself would ultimately be affected.

On a careful reading of the record, we do not find that the facts in this case justify the imposition of the penalty set out in the Statute and, therefore, reverse the Chancellor's ruling in this respect. The Court, as aforesaid, affirms the Chancellor in all other matters.

DYER, C. J., McCANLESS and FONES, JJ., and LEECH, Special Justice, concur.