FILED

May 17, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 8:07 AM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT MURFREESBORO

| | | |
|---|---|---|
| STEVEN ZIMMERMAN | ) | Docket No.: 2015-05-0283 |
| **Employee,** | ) | |
| v. | ) | **State File Number: 1045-2015** |
| 2G STAFFING SERVICES, INC. | ) | |
| **Employer.** | ) | **Judge Dale Tipps** |
| | ) | |

## EXPEDITED HEARING ORDER DENYING REQUESTED MEDICAL BENEFITS

This matter came before the undersigned workers' compensation judge on May 10, 2016, on the Request for Expedited Hearing filed by the employee, Steven Zimmerman, pursuant to Tennessee Code Annotated section 50-6-239 (2015). The present focus of this case is Mr. Zimmerman's entitlement to additional medical treatment. The central legal issue is whether the evidence is sufficient for the Court to determine that Mr. Zimmerman likely to establish at a hearing on the merits the requested treatment is medically reasonable and necessary. For the reasons set forth below, the Court finds Mr. Zimmerman has not met his burden of establishing entitlement to the requested medical benefits at this time.[1]

### History of Claim

The following facts were established at the Expedited Hearing. Mr. Zimmerman is a forty-six-year-old sheet-metal mechanic residing in Maury County, Tennessee. On January 3, 2015, while installing ductwork on a construction site, he twisted his left knee and felt a pop. He reported the injury to his supervisor, and his employer, 2G, sent him for medical treatment at Maury Regional Hospital. The physicians at Maury Regional provided a knee immobilizer and referred him to an occupational medicine specialist. (Ex. 3.) 2G provided a panel of physicians, from which Mr. Zimmerman selected Dr. Caleb Wallwork.

After examining Mr. Zimmerman on January 9, 2015, Dr. Wallwork ordered an

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix.

MRI and assigned light-duty work restrictions. He then referred Mr. Zimmerman to an orthopedic specialist a few days later. (Ex. 4.) 2G provided another panel, and Mr. Zimmerman selected orthopedic surgeon Dr. Thomas Tompkins.

Dr. Tompkins first saw Mr. Zimmerman on February 3, 2015. He noted Mr. Zimmerman's knee was stiff but found no swelling. The MRI showed a partial ACL tear, but the knee felt stable. Dr. Tompkins ordered physical therapy for "range of motion, ACL protocol." (Ex. 5.)

Mr. Zimmerman returned on February 25, 2015. Dr. Tompkins' notes include information from the physical therapist, who reported Mr. Zimmerman was not bearing weight and was reluctant to comply with weight-bearing activities. The therapist said Mr. Zimmerman complained of unbearable pain and told her he wanted surgery. Dr. Tompkins examined Mr. Zimmerman, who was on crutches, and noted, "some pain behavior present. He is grimacing when I touch his knee; however, his left knee is not swollen. It still feels very stable on ligament testing." He reviewed Mr. Zimmerman's x-rays again and found they were normal. He stated, "Steven is having a lot of subjective pain out of proportion to the injury. I think his knee is stable. I do not think he has a significant ACL tear and I advised him to start getting serious about his physical therapy." *Id*.

Following a functional capacity evaluation (FCE), Mr. Zimmerman returned to Dr. Tompkins on March 16, 2015. He reported increased pain in the back of his knee since the FCE. He was using crutches, limping, and grimacing with pain "with the lightest of touch." Dr. Tompkins found no swelling, effusion, or fluid on the knee, and noted Mr. Zimmerman had full extension and normal ligament testing. Dr. Tompkins felt Mr. Zimmerman's "symptoms are out of proportion to the physical findings and MRI findings. He does not complain of any instability at all, just posterior pain." He released Mr. Zimmerman to return to work with a fifty-pound lifting restriction and occasional kneeling and crouching. *Id*.

Mr. Zimmerman continued to follow up with Dr. Tompkins until April 24, 2015. At that time, Dr. Tompkins reviewed a new MRI report, which showed some degeneration of the ACL with a small cyst, decreased in size from the prior MRI. Dr. Tompkins' impression was:

> Steven I think may have had a partial ACL tear, [but] the knee has always been stable. The small chondral defect, I do not think it is the source for his pain. [A]t least this small defect would not be enough to cause the amount of pain that he is having and certainly would not be enough to cause him to be on crutches now for 3½ months. As stated before, the subjective complaints are not matched with the physical findings and objective imaging results.

Dr. Tomkins found Mr. Zimmerman had reached maximum medical improvement (MMI) and released him to return to full duty with no permanent impairment. *Id.*

Mr. Zimmerman disagreed with Dr. Tompkins' conclusions and sought a private second opinion with Dr. Jason Haslam on June 8, 2015. He reported intense pain and difficulty bearing weight with his left knee since it popped at work on January 3, 2015. Dr. Haslam examined Mr. Zimmerman and noted tenderness of the left knee with no effusion, redness, or warmth. He found limited range of motion, but no instability. After reviewing the January 16, 2015 MRI, he assessed a possible ACL tear, chondromalacia, and acute pain. Dr. Haslam performed an injection and prescribed a Sterapred dosepak. He also discussed the need for a reaction knee brace, as well as the need for Mr. Zimmerman to bear weight on the knee and work on his range of motion. (Ex. 6.)

Mr. Zimmerman returned to Dr. Haslam on July 6, 2015, reporting no improvement. Dr. Haslam noted Mr. Zimmerman had failed conservative treatment since January and said Mr. Zimmerman "is insistent and would like to pursue surgical intervention." Dr. Haslam referred him for a surgical consultation with Dr. William Fontenot. *Id.*

Mr. Zimmerman saw Dr. Fontenot on July 14, 2015.[2] Dr. Fontenot assessed a rupture of the ACL of the left knee. He noted further, "this is plain and clear – he had an injury at work with subsequent and current instability and an MRI [consistent with] an ACL tear. ACL tears do not heal on their own. I strongly recommend surgical reconstruction." (Ex. 7.)

Mr. Zimmerman provided Dr. Haslam's office records to 2G, who sent him back to Dr. Tompkins on August 19, 2015. Dr. Tompkins reviewed the records and noted they reflected no swelling or instability. He observed similar results in his own examination of Mr. Zimmerman that day. His assessment was:

> Subjective knee pain. Again, I do not find a good reason to proceed with arthroscopy of his knee. He has had two MRIs of the knee neither of which show a problem that a scope would help. He does not need ACL reconstruction as his ACL exam is normal. The proposed surgery would be strictly exploratory in nature. I told him my honest opinion is that I would not recommend surgery on the knee. If another physician wants to do it then he could proceed, but I would not recommend this. The recommendation is based on multiple exams to the patient's objective tests such as MRI and x-ray and physical findings. I told him of course I could

---

[2] The only medical record submitted from Dr. Fontenot apparently references this visit, but is dated January 14, 2016.

be wrong, but I think it is more likely than not the intervention would not be helpful.

(Ex. 5.)

In response to Mr. Zimmerman's subsequent surgery requests, 2G provided another panel for a second opinion, from which Mr. Zimmerman selected Dr. Brandon Downs. Dr. Downs examined Mr. Zimmerman on March 3, 2016, and reviewed his medical records and MRI results. He noted tenderness, but no swelling or effusion, near full range of motion, and no instability of the knee. Dr. Downs issued a Preliminary Report that indicated his initial diagnosis was left knee strain. He ordered another MRI and a complete set of x-rays, a Depo Medrol injection, and he fitted Mr. Zimmerman with an elastic brace. He instructed Mr. Zimmerman to return after the MRI was complete. He also issued a physical therapy order for four weeks of physical therapy for a left knee sprain and chondromalacia. (Ex. 8.)

Although Mr. Zimmerman testified he saw Dr. Downs and received another injection on at least one other occasion, the parties submitted no additional records from Dr. Downs. It appears, however, that 2G denied any further treatment with Dr. Downs, as well as the physical therapy he prescribed. (Ex. 1.)

Mr. Zimmerman filed a Petition for Benefit Determination seeking additional medical treatment. The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice. Mr. Zimmerman filed a Request for Expedited Hearing, and this Court heard the matter on May 10, 2016.

At the Expedited Hearing, Mr. Zimmerman acknowledged that he and Dr. Tompkins "clashed." He is dissatisfied with Dr. Tompkins' treatment and does not believe Dr. Tompkins accurately diagnosed his problems. He disagrees with Dr. Tompkins' full-duty release and MMI opinion, noting that Dr. Downs put him back in a knee brace and assigned light-duty restrictions. Mr. Zimmerman asserts 2G should allow him to resume treatment with Dr. Downs for his work-related left knee injury. He said he just wants to get his knee fixed and get back to work.

2G countered that Mr. Zimmerman is not entitled to any additional treatment with Dr. Downs, as Mr. Zimmerman saw him only for a second opinion and Dr. Downs is not the authorized treating physician (ATP). 2G confirmed that it has not denied Mr. Zimmerman's claim and he may return to his ATP, Dr. Tompkins, at any time, including asking Dr. Tompkins to address Dr. Downs' conclusions. 2G further relies on Tennessee Code Annotated section 50-6-204(a)(3)(H), which provides that an ATP's treatment recommendations are presumed to be reasonable. 2G argues Mr. Zimmerman has not presented sufficient proof to overcome that presumption.

4

## Findings of Fact and Conclusions of Law

The following legal principles govern this case. Because this case is in a posture of an Expedited Hearing, Mr. Zimmerman need not prove every element of his claim by a preponderance of the evidence in order to obtain relief. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, he must come forward with sufficient evidence from which this Court might determine he is likely to prevail at a hearing on the merits. *Id.*; Tenn. Code Ann. § 50-6-239(d)(1)(2015). In analyzing whether he has met his burden, the Court will not construe the law remedially or liberally in his favor, but instead shall construe the law fairly, impartially, and in accordance with basic principles of statutory construction favoring neither Mr. Zimmerman nor 2G. *See* Tenn. Code Ann. § 50-6-116 (2015).

Applying these principles to the facts of this case, the Court cannot find at this time that Mr. Zimmerman is entitled to the requested medical benefits. It is undisputed that Mr. Zimmerman selected Dr. Tompkins from a panel provided by 2G and Dr. Tompkins provided authorized treatment. Dr. Tompkins is, therefore, the ATP, pursuant to Tennessee Code Annotated section 5-6-204(a)(3)(A)(i) (2015), which provides:

> The injured employee shall accept the medical benefits. . . provided that in any case when the employee has suffered an injury and expressed a need for medical care, the employer shall designate a group of three (3) or more independent reputable physicians. . . from which the employee shall select one (1) to be the treating physician.

Mr. Zimmerman expressed his belief during the hearing that Dr. Tompkins does not wish to see him anymore. If true, Mr. Zimmerman would likely be entitled to select a new treating physician. However, he submitted no evidence in support of this contention, and Dr. Tompkins' August 19, 2015 note concludes with the statement, "He is to schedule a follow-up visit PRN."

Further, the evidence submitted to date, including Mr. Zimmerman's testimony during the hearing, indicates that 2G provided Dr. Downs for a second opinion. Tennessee Code Annotated section 5-6-204(a)(3)(C) (2015) establishes the right to second opinions in some circumstances, but specifies, "The employee's decision to obtain a second opinion shall not alter the previous selection of the treating physician or chiropractor." Consequently, Dr. Downs' evaluation of Mr. Zimmerman does not affect Dr. Tompkins' status as the treating physician.

"As a general rule, if the employee is dissatisfied with the treating doctor's findings, the employee may (1) move the court to appoint a neutral physician, (2) consult with the employer and make other arrangements, or (3) go to a physician of his or her

own choice, without consulting the employer, and thus be liable for such services." *Consolidation Coal Co. v. Pride*, 452 S.W.2d 349, 354 (Tenn. 1970). Further, "a showing of a difference in professional opinions between the employer's physician and that of the employee, without more, does not prove that Plaintiff was receiving inadequate care from the employer's doctor." *Buchanan v. Mission Ins. Co.*, 713 S.W.2d 654, 658 (Tenn. 1986). Mr. Zimmerman presented differing medical opinions, but did not submit any additional expert proof supporting his contention that Dr. Tompkins' diagnosis was incorrect or his treatment unreasonable.[3] Accordingly, the Court cannot find at this time that Mr. Zimmerman is likely to establish at a hearing on the merits that he is entitled to the requested treatment with Dr. Downs.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Zimmerman's claim against 2G and its workers' compensation carrier for the requested medical benefits is denied.

2. This matter is set for an Initial (Scheduling) Hearing on June 28, 2016, at 9:00 a.m.

**ENTERED this the 17th day of May, 2016.**

_____
**Judge Dale Tipps**
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

An Initial (Scheduling) Hearing has been set with **Judge Dale Tipps, Court of Workers' Compensation Claims. You must call 615-741-2112 or toll free at 855-874-0473 to participate.**

**Please Note: <u>You must call in on the scheduled date/time to participate.</u> Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).**

---

[3] The Court notes Dr. Fontenot stated that ACL tears do not heal themselves. However, it also appears his surgical recommendation was based on Mr. Zimmerman suffering an "injury at work with subsequent and current instability and an MRI [consistent with] an ACL tear." This conclusion is suspect in the absence of any notation of instability in any of Mr. Zimmerman's medical records. Further, it does not appear from Dr. Fontenot's note that he reviewed either of Mr. Zimmerman's MRI studies or was aware that the ACL tear was diagnosed as a partial tear only.

<u>Right to Appeal</u>:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if

any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

**APPENDIX**

Exhibits:
1. Affidavit of Steven Zimmerman
2. Transcript of Deposition of Steven Zimmerman
3. Records from Maury Regional Hospital
4. Records from Workers' Health of Columbia
5. Records from Tennessee Orthopaedic Alliance
6. Records from Seven Springs Orthopaedics & Sports Medicine
7. Records from Dr. William Fontenot
8. Records from Dr. Brandon Downs
9. C-42 Physician Panel
10. C-41 Wage Statement
11. Mileage Worksheet
12. Employee's written statement and FCE Report
13. April, 12, 2016 written notice from Brenda Gilliam (Identification Only)

Technical record:[4]
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing

---

[4] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the Expedited Hearing Order Denying Requested Medical Benefits was sent to the following recipients by the following methods of service on this the 17th day of May, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Steven Zimmerman | X | | | 211 Olive St. Mt. Pleasant, TN 38474 |
| Alex Morrison | | | X | abmorrison@mijs.com |

_____
**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

10