**Laquita PERRY, Plaintiff/Appellant,**

v.

**TRANSAMERICA INSURANCE GROUP, Defendant/Appellee.**

Court of Appeals of Tennessee, Western Section, at Jackson.

Sept. 9, 1985.

Rehearing Denied Dec. 30, 1985.

Anthony Deal, Memphis, for plaintiff/appellant.

Hunter K. Cochran and Robert F. Uhlmann, Memphis, for defendant/appellee.

TOMLIN, Judge.

The single issue presented by this appeal is whether or not the exclusive remedy provision of the Tennessee Workers' Compensation Act bars an employee who has sustained a compensable injury covered by the act from maintaining an independent action against the workers' compensation carrier of the employer.

Plaintiff sued for both compensatory and punitive damages on the grounds of alleged bad faith in handling the workers' compensation claim, negligence in regard to handling that claim, and outrageous conduct. The Circuit Court of Shelby County sustained defendant's motion to dismiss for

failure to state a claim upon which relief could be granted.

The facts of the instant case, insofar as the workers' compensation claim itself, are immaterial to our decision. As stated by our Supreme Court in *Liberty Mutual Insurance Co. v. Stevenson*, 212 Tenn. 178, 368 S.W.2d 760, 761 (1963):

> We will not go into the factual situation in the instant case because the question can, and should be, determined in a workmen's compensation case of whether or not such action is permissible regardless of the gravity of the factual situation upon which damages of this sort have been placed upon a party. We will thus try to confine ourselves purely to the legal aspects of the question.

The material facts as alleged in the complaint are as follows: While employed at the Q-Mart in Bolivar, Tennessee, plaintiff sustained an on-the-job injury to her back. At the time of the injury, defendant was the workers' compensation carrier for plaintiff's employer. Following her injury plaintiff saw several doctors because defendant failed to furnish her with a choice of physicians, as required by the statute. Furthermore, defendant failed to timely pay her benefits for the time that she was temporarily and totally disabled. Plaintiff returned to her employment in July, 1979, but was fired the following month because she lacked the capacity to work. After employing an attorney, defendant's representatives agreed and authorized plaintiff to see Dr. Sam Hunter, a Memphis neurosurgeon. Following Dr. Hunter's examination, arrangements were made to admit plaintiff to Baptist Hospital in Memphis for exploratory surgery. Dr. Hunter advised defendant by letter of his plans to submit plaintiff to surgery. Anticipating that the surgery and hospitalization would be approved by defendant, plaintiff traveled from Bolivar to Memphis to Baptist Hospital, but was declined admission because the hospitalization was not authorized by defendant. Finally, plaintiff sought and was denied extraordinary relief in the Chancery Court of Shelby County and "defendant has refused to allow plaintiff admission to the hospital to obtain medical attention for her injury."

In its answer, defendant admitted the allegations pertaining to plaintiff's employment and her injury. Defendant denied that it had failed to furnish her with a choice of physicians or to timely pay her benefits. Defendant further admitted that it agreed that plaintiff should see Dr. Sam Hunter, that she was examined by him, and that he did in fact recommend that plaintiff be admitted to the hospital for exploratory surgery for a probable ruptured disc. Defendant likewise admitted that it refused to pay for admission of plaintiff to Baptist Hospital. It denied that it refused to allow plaintiff admission to the hospital.

By way of additional defense, defendant asserted in its answer that following her injury plaintiff was hospitalized where she underwent conservative treatment. She was approved to return to work some two months following the accident. After returning to work she was fired for reasons unrelated to her back injury. Defendant, in conclusion, alleged that it had complied with all of its obligations to plaintiff under the Workers' Compensation Act in that the claim had been compromised, settled and approved by the court, and that it was no longer indebted to plaintiff for any sum under the act.

The record reflects that plaintiff had in fact filed a complaint in the Circuit Court of Shelby County pursuant to the workers' compensation laws, and that a settlement of her workers' compensation claim was approved by an order of Judge McPherson in December, 1981.

Defendant filed a motion for summary judgment, raising the defense of the exclusive remedy provision of the Tennessee Workers' Compensation Act and also asserting the settlement of the workers' compensation claim. Defendant also cited the provision of the act that provides for a penalty of six percent on any unpaid installment against the employer or his carrier for a proven bad faith failure to pay a claim. No affidavit or response to the mo-

tion for summary judgment was filed. Judge Irving Strauch, sitting at that time as Judge of Division IV, overruled the motion.

Plaintiff filed an amended complaint, substantially in the same form and substance as her prior one, but in addition alleging emotional distress and again seeking both compensatory and punitive damages. Along with its answer to the amended complaint, defendant filed a motion to dismiss for failure to state a claim, asserting that the Workers' Compensation Act provided the exclusive remedy for plaintiff, and that its penal provisions for bad faith failure to pay benefits was likewise an exclusive remedy. Defendant also asserted that punitive damages were not proper. Judge James Swearengen, Judge Strauch's successor, granted defendant's motion to dismiss, finding that plaintiff's complaint failed to state a claim upon which relief could be granted. It is in this posture that we hear this appeal.

█ We have determined that insofar as reported cases are concerned, this is a case of first impression in this state. Stated another way, the question is whether plaintiff has a cause of action. The benefits conferred by the Workers' Compensation Act are purely statutory, and the circumstances under which they are paid and the manner in which they are calculated depend solely upon statutory authority. As stated in *Noe v. Travelers Insurance Co.,* 172 Cal.App.2d 731, 342 P.2d 976, 977 (1959):

> Workmen's compensation contemplates a substitution of the contractual rights and obligations which normally flow between worker and employer with a complete and exclusive statutory scheme based not upon contract but upon status. The relationship of employer and employee itself generates the rights and obligations; the legislation describes the content and extent of those rights and obligations.

Tennessee Code Annotated § 50–6–108 addresses those rights and remedies. It provides that:

> *Right to compensation exclusive.*—The rights and remedies herein granted to an employee subject to the Workers' Compensation Law on account of personal injury or death by accident, including a minor whether lawfully or unlawfully employed, shall exclude all other rights and remedies of such employee, his personal representative, dependents, or next of kin, at common law or otherwise, on account of such injury or death.

As the above-quoted code section reflects, in general, workers' compensation laws involve a *quid pro quo* in that workers give up certain common law rights against their employers in return for a system providing more certain compensation, totally independent of any fault on the part of the employer. *See Estate of Schultz v. Munford, Inc.,* 650 S.W.2d 37 (Tenn.App.1982), *appeal denied* (1983).

Furthermore, the Workers' Compensation Act specifically equates the compensation carrier with the employer. In the definition section of the act, codified as Tenn. Code Ann. 50–6–102(3), "employer" is defined as follows:

> (3) "Employer" shall include any individual, firm, association or corporation, or the receiver, or trustee of the same, or the legal representative of a deceased employer, using the services of not less than five (5) persons for pay, and in the case of an employer engaged in the mining and production of coal, one (1) employee for pay. *If the employer is insured, it shall include his insurer, unless otherwise herein provided....* (Emphasis supplied)

In *Spears v. Morris and Wallace Elevator Co.,* 684 S.W.2d 620 (Tenn.App.1984), *appeal denied* (1985), an employee who suffered an injury compensable by workers' compensation brought a common law negligence action against an elevator company and the elevator inspector. The inspector was employed by the employer's workers' compensation carrier by mere coincidence. In holding that the employee

could not bring suit against the elevator inspector, this Court stated:

> From a quick examination of § 50–902, if the employee's employer is insured, then under the definition section of the Workers' Compensation Law, wherever used in the statute the term "employer" shall also be construed to mean the employer's insurer. In other words, by the express provisions of our Workers' Compensation Law, the workers' compensation insurer is equated with the employer.

*Id.* at 622–3.

Plaintiff contended that her cause of action for negligence and outrageous conduct against the insurer was a viable one, inasmuch as the damages for which she sued arose from an "injury" that did not occur in the course of her employment. Therefore, this is a suit outside the workers' compensation statute. In support of her position she cites cases from some three or four other jurisdictions that have allowed claims such as this.

We are not persuaded by her argument. Workers' compensation rights are purely creatures of statute, and, therefore, we must look to the particular statute with which we are dealing. It has already been pointed out that under our statute the insurer is equated fully and completely with the employer. The acts complained of were committed by a representative of the insurer. Paraphrasing the intent of the statute, the acts complained of were committed by a representative of the employer.

It is our opinion that the principles set forth in *Liberty Mutual Insurance Co. v. Stevenson,* 212 Tenn. 178, 368 S.W.2d 760 (1963), decided by our Supreme Court, control and direct our decision in this case. In *Stevenson,* the employee filed a workers' compensation claim in chancery court seeking compensation under the statute, as well as punitive damages, the latter on the ground that the insurance company refused to pay compensation for a period of five months prior to trial. The trial court made an award of permanent partial disability to the body as a whole in accordance with the

provisions of the statute, and, in addition, awarded plaintiff a judgment of $2,500 as punitive damages for the alleged mishandling of the claim by the company. Relying upon the exclusivity provision of the compensation act, our Supreme Court held unequivocally that punitive damages could not be recovered under the Workers' Compensation Act, stating:

> This Act constitutes a complete substitute for previous remedies in tort on the part of an employee, and protects the employee in literally hundreds of ways whereby an employee and his family can get a scheduled amount for various and sundry injuries to feed and care for him while the employee is ailing from these injuries. The Legislature has made the rights of the employee and employer the exclusive remedy. When one accepts benefits under an Act of this kind they must likewise take the burdens. If the Legislature in enacting these different benefits under this Workmen's Compensation Act had seen fit to penalize a delinquent or recalcitrant or an employer who came within the terms where punitive or damages of that kind would apply, they would have enacted such a statute. This statute has been on the books now for forty odd years. Of course, we know as a matter of practical knowledge that over the years many things of the kind have come up, but the Legislature evidently hasn't thought this was a sufficient reason to make them speed up the rights and remedies of the employee or certainly they would have enacted something long since. There is no provision in the Act for punitive damages or any of its synonymous terms.

*Id.* 368 S.W.2d at 762.

In emphasizing the exclusive nature of the relief provided under the act, our Court quoted extensively from Larson's Treatise on Workmen's Compensation, which we find persuasive and relevant here:

> The best reasoning we have seen on this proposition is contained in Larson's Workmen's Compensation, Vol. 2, beginning at page 138 § 65.30. The first paragraph or two of this section discusses

disfigurement cases and other cases of the kind where there is no provision made under the Act for compensation. Since the Act doesn't contain any provision for such things, loss of teeth and things of that kind which do not come within the Act, it sometimes seems kind of hard, but since the Act doesn't provide for it there is no way to compensate the man. Then the author says this:

" * * * What will the new boundary on the elements of damage be, short of the entire range of tort elements, including pain and suffering, impotency, loss of child-bearing capacity, loss of consortium, exemplary damages, and so on? It may be argued that refusal to recognize these items as compensable is unfair to the claimant, but this argument forgets that we are here dealing with the non-fault liability of an employer to an employee who may have well brought on the injury by his own personal negligence. Such liability can be justified as a social measure to prevent hardship due to wage loss, present and prospective, but there is no basis in the philosophy or purpose of workmen's compensation for making non-faul (sic) awards which bear no relation to earning capacity merely because the claimant has suffered some other kind of loss which arouses one's sympathy. * * *

"The point here is not that such losses should go unremedied, but that if a legislature sets out to undo the injustice of denying a remedy for such losses both under the compensation acts and at common law, it would do better to restore the common-law remedy. This would be more equitable from the employers' point of view, because he would be liable only when actionable negligence attributable to him could be shown, and from the employee's point of view, because he would not be held down to maximum limits of two or three thousand dollars for injuries which might, at common law, bring verdicts of many times that amount."

This statement of Larson is the real answer of why punitive damages may not be awarded in a workmen's compensation case.

*Id.* 368 S.W.2d at 763.

In conclusion, the Court said that

the Act doesn't penalize the employer or his insurance carrier for failure to comply therewith in the allowance of punitive damages or its synonymous terms. Of course, some states do have statutory provisions for penalties if the compensation carrier, or the employer, hasn't complied with the terms of the Act by acting arbitrarily or capriciously without probable cause, such as in the case of *Fruge v. Pacific Employers Ins. Co.*, 226 La. 530, 76 So.2d 719, 721. The penalties allowed there were purely statutory penalties. In every such case that we can find it is only where the penalties are made statutory and not growing out of the punitive element that might be awarded in tort actions where the facts justify the award.

*Id.* 368 S.W.2d at 763–64.

While *Stevenson* is not on all fours with the case at bar, the basic facts are substantially the same. In each case plaintiff claimed that she suffered some type of an "injury" for which she sought damages by virtue of the alleged mishandling of the workers' comp claim by the employer's insurance carrier.

The rationale behind denying such an independent action has been well stated in a case substantially identical to the case at bar:

[W]e must point out that if delay in medical service attributable to a carrier could give rise to independent third party court actions, the system of workmen's compensation could be subjected to a process of partial disintegration. In the practical operation of the plan, minor delays in getting medical service, such as for a few days or even a few hours, caused by a carrier, could become the bases of independent suits, and these could be many and manifold indeed. The uniform and exclusive application of the law would become honeycombed with independent and conflicting rulings of the courts. The objective of the Legislature and the

whole pattern of workmen's compensation could thereby be partially nullified. 342 P.2d at 979–80.

In addition, although secondary to the reasons above stated but nonetheless material, following the Supreme Court opinion in *Stevenson,* our legislature enacted a penal provision as part of the Workers' Compensation Act, codified as Tenn. Code Ann. § 50–6–205(b), which provides that "[a]ny employer or his insurance carrier who fails to pay compensation as herein provided shall suffer a penalty of six percent (6%) on any unpaid installments." Our Supreme Court has interpreted this statute to require bad faith on the part of the insurance carrier in order to be subject to these penal provisions. *See Mayes v. Genesco, Inc.,* 510 S.W.2d 882 (Tenn.1974).

For the reasons above stated, the judgment of the trial court is affirmed. Costs in this cause are taxed to the plaintiff, for which execution may issue, if necessary.

TOMLIN, CRAWFORD and HIGHERS, JJ., concur.