IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 15, 2006 Session

## FEDERATED RURAL ELECTRIC INSURANCE EXCHANGE, ET AL. v. WILLIAM R. HILL, ET AL.

### Appeal from the Circuit Court for Davidson County
No. 05C-1284     The Honorable Barbara Haynes, Judge

---

### No. M2005-02461-COA-R3-CV - Filed on March 26, 2007

---

Employer and its insurer filed suit against employee for fraud in the procurement of workers' compensation benefits. Employee and his wife filed a counter-complaint alleging intentional infliction of emotional distress. retaliatory discharge and loss of consortium. The trial court dismissed the counter-complaint for failure to state a claim. Employee sought to amend the counter-complaint to add procurement of breach of employment contract and a tortious interference claim against the insurer. The trial court also denied these claims. Employee and his wife appeal. We reverse in part, affirm in part, and remand.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Reversed in Part, Affirmed in Part, and Remanded

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and HOLLY M. KIRBY, J., joined.

Clifford E. Wilson of Madisonville, Tennessee for Appellants, Federated rural Electric Insurance Exchange and Fort Loudoun Electric Cooperative

W. Stuart Scott and Autumn L. Gentry of Nashville, Tennessee for Appellees, William R. Hill and Suzann C. Hill

### OPINION

During the course of his employment with Fort Loudoun Electric Cooperative ("Fort Loudoun,"), William R. Hill allegedly suffered on-the-job injuries to his knees over the course of several years. In 1990, Fort Loudoun and its insurer, Federated Rural Electric Insurance Exchange ("Federated" and, together with Fort Loudoun, "Plaintiffs" or "Appellees") accepted a workers compensation claim and voluntarily paid Mr. Hill $23,595.00 in temporary total disability benefits and $51,160.11 in medical benefits for alleged injuries to Mr. Hill's knees. The 1990 settlement resulted in 70% permanent partial disability to the body as a whole.

On July 9, 2003, Fort Loudoun and Federated entered into a second settlement with Mr. Hill whereby they agreed to pay Mr. Hill workers' compensation benefits for an alleged 1998 injury to Mr. Hill's knees. Under the Agreed Order, the Plaintiffs paid medical benefits in the amount of $114,064.49, case management costs of $8,464.13, and $14,346.42 in temporary disability benefits. This settlement, along with the 1990 settlement, totaled 100% permanent, partial disability benefits to the body as a whole. In addition, Federated and Fort Loudoun agreed to leave lifetime future medical benefits open for treatment of Mr. Hill's injuries, and paid $2,500.00 as an advance payment toward future lifetime medical benefits. Combined, the 1990 and 2003 settlements brought Mr. Hill to over 100% in temporary, total and permanent, partial disability benefits, thereby exceeding the maximum amount to which a claimant is entitled under the Tennessee Workers' Compensation Act, T.C.A. § 50-6-102.

In November 2004, Mr. Hill underwent an arthroscopic procedure on his knees, which was performed by Dr. Rick Parsons. Thereafter, Mr. Hill was offered light-duty desk work at Fort Loudoun. While Mr. Hill was out from work and collecting total disability benefits, he was caught on videotape building a barn. Over the course of several days, Mr. Hill was seen climbing up and down a ladder, walking over uneven ground, and walking across a roof without apparent difficulty. After reviewing the videotapes, Mr. Hill's treating physician, Dr. Parsons, opined in an April 25, 2005 letter that "[Dr. Parsons] certainly do[es] not feel like Mr. Hill is totally disabled to work and given his documented physical activities . . . it is difficult to imagine the patient having restrictions given the physical labor he did on an ongoing basis . . . ."

By letter dated May 2, 2005, Fort Loudoun terminated Mr. Hill's employment. On that same day, Fort Loudoun and Federated filed suit against Mr. Hill for fraud, pursuant to T.C.A. § 50-6-225(a)(1) and the Workers' Compensation Fraud Act, T.C.A. § 56-47-101 et seq., citing Mr. Hill's ability to perform strenuous, physical activity as caught on videotape. The Plaintiffs requested a finding that Mr. Hill was improperly collecting temporary, total disability benefits and a finding that Mr. Hill had engaged in fraud. The Plaintiffs prayed that Mr. Hill be assessed appropriate penalties and that his right to any additional workers' compensation benefits (which had been approved by the trial court's order of July 9, 2003, *supra*) be terminated. At the time they filed the Complaint, the Plaintiffs also served interrogatories, requests for production of documents and requests for admissions on Mr. Hill. Mr. Hill was served with these discovery requests on or about May 7, 2005. Mr. Hill filed no responsive pleadings. Rather, on or about May 23, 2005, Mr. Hill served the Plaintiffs with notice to take depositions. On May 25, 2005, Plaintiffs filed a Motion to Quash the discovery requests and, on May 27, 2005, Mr. Hill responded to the Motion to Quash. The motions were heard on May 27, 2005 and, by order of June 6, 2005, the trial court granted the Motion to Quash.

On June 2, 2005, Mr. Hill filed a motion to dismiss, in which he first objected to venue in the Davidson County court. Plaintiffs filed a response to the motion to dismiss on July 8, 2005. The motion was heard on July 15, 2005. By order of July 27, 2005, the trial court entered an order denying Mr. Hill's motion to dismiss and specifically retaining venue.

On June 9, 2005, Mr. Hill filed an Answer to the Complaint. On July 29, 2005, Mr. Hill filed a Counter-Complaint against Federated and Fort Loudoun for intentional infliction of emotional distress and retaliatory discharge. Mr. Hill's wife, Suzann (together with Mr. Hill, the "Hills" or "Appellants") joined in the Counter-Complaint, asserting derivative causes of action and a loss of consortium claim stemming from the termination of Mr. Hill's employment. On August 26, 2005, in response to the Counter-Complaint, Plaintiffs filed a "Motion to Dismiss the Counter-Complaint for failure to state a claim upon which relief may be granted, to strike the Counter-Complaint, to Request a more Definitive Statement." The Hills filed a response to this motion on September 6, 2005 and the motion was heard on September 9, 2005.

On September 21, 2005, the trial court entered an Order, which reads, in relevant part, as follows:

> 3. William R. Hill has acknowledged that there is no valid tort of bad faith claim against the Plaintiffs or either of them. Insofar as the Counter-Complaint implied a tort of bad faith existed against the Plaintiffs or either of them, any and all such claims are stricken and dismissed with prejudice. The Defendant, however, William R. Hill, through his attorney has taken the position that the Counter-Complaint, which he previously filed, was not intended to include a tort of bad faith. There is, therefore, no tort of bad faith which has been asserted or which will or may be pursued in this lawsuit. This Court also finds that no tort of bad faith has ever been alleged against Federated Rural Electric Insurance Exchange and Fort Loudoun Electric Cooperative.

> 4. William R. Hill asserts intentional infliction of emotional distress and what appears to be outrageous conduct. These torts are barred by the exclusive remedy provisions of the Tennessee Workers' Compensation Act, T.C.A. § 50-6-108. In addition, the Counter-Complaint failed to assert the elements which Tennessee law mandates as necessary to pursue any such tort claims, even if they were otherwise allowed. These claims are dismissed with prejudice to the refiling thereof.

> 5. Suzann Hill asserts entitlement to numerous forms of damages. The gravamen of her allegations appears to be intentional infliction of emotional distress and retaliatory discharge. Suzann Hill's claims fail to generate a claim upon which relief can be granted under Tennessee law. Her tort claims are barred by the exclusive remedy provisions of the Tennessee Workers' Compensation Act and the damages she seeks are not damages which she may recover under retaliatory discharge or otherwise in this lawsuit. In addition, the

Counter-Complaint fails to assert necessary elements to support these claims under Tennessee law. Suzann Hill is not a proper party to this lawsuit. Her claims are loss of consortium or derivative claims of the torts which are barred by the exclusive remedy provisions of the Tennessee Workers' Compensation Act. Any and all claims of Suzann Hill are dismissed with prejudice.

6. The Counter-Complaint of the Defendant, William R. Hill, is stricken. William R. Hill shall generate a new Counter-Complaint which complies with Tennessee law within 30 days of September 15, 2005. This Counter-Complaint shall contain only claims under the Tennessee Workers' Compensation Act and for retaliatory discharge. This Counter-Complaint shall comply with Tennessee law and the Rules of Civil Procedure including a short and plain statement of each claim showing that the pleader is entitled to relief and a demand for judgment for the relief the pleader seeks in harmony with Tennessee law. The Counter-Complaint shall make a more definite statement as to each of these two remaining claims in harmony with Tennessee Rules of Civil Procedure Rule 12.05. Further, only the damages allowed by Tennessee law for these two remaining claims shall be pled. In addition, all other claims of the Defendant, William R. Hill, are dismissed with prejudice to the refiling thereof.

On October 12, 2005, Mrs. Hill filed her Notice of Appeal from the September 21, 2005 Order. On that same day, Mr. Hill filed his First Amended Counter-Complaint. Counsel for Plaintiffs protested the Amended Counter-Complaint and informed counsel for Mr. Hill that they would file a motion to dismiss if the Counter-Complaint was not further amended to comply with Tennessee law and the September 21, 2005 Order. Mr. Hill did not make the requested changes. Rather, on or about December 1, 2005, Mr. Hill filed a Motion for Default Judgment for Plaintiffs' alleged failure to answer. On December 8, 2005, Plaintiffs filed a Motion to Dismiss, Motion to Strike, Motion to Stay Litigation and Response to Motion for Default Judgment, in which Plaintiffs argued, *inter alia*, that Mr. Hill had failed to state a claim upon which relief could be granted.

On December 28, 2005, Mr. Hill filed a Motion to Amend the first Amended Counter-Complaint seeking to add claims against Federated for tortious interference with contract and procurement of breach of contract. On January 6, 2006, Plaintiffs filed a response in which they assert that the proposed Amended Counter-Complaint fails to state a claim.

All pending motions were heard on January 20, 2006. On February 13, 2006, the trial court entered it "Final Order," which reads, in pertinent part, as follows:

1. The Defendants' Motion for Default Judgment is overruled. There is no valid basis for a default judgment against the Plaintiffs in this

-4-

matter. The proposed Counter-Complaint and Amended Counter-Complaint contain tort claims which the Defendant had previously been advised violate the exclusive remedy provision of the Tennessee Workers' Compensation Act, T.C.A. § 50-6-108. In addition, the tort claims sought to be included by the Defendant fail to assert the necessary elements and, therefore, they failed to comply with Tennessee Rules of Civil Procedure, Rule 12.02(6).

\*   \*   \*

3. Any and all litigation in this matter is stayed. This Court previously lifted the Scheduling Order. Since this time, the Defendant, although he failed to attend a Scheduling Conference set by this Court, has apparently attempted to pursue litigation before this Trial Court while simultaneously appealing the September 9, 2005 ruling of this Court to the Court of Appeals. The ruling of the Court of Appeals could affect the parties, the claims, the legal theories and the damages. This Court finds it is inappropriate for any additional litigation to occur in this matter at this time and, therefore, stays any and all proceedings pending a final ruling from the Appellate Courts regarding any issues appealed in this case.

Mr. Hill filed a timely Notice of Appeal from this Order and his appeal was consolidated with Mrs. Hill's appeal. The Hills raise seven issues for review, as stated in their brief:

1. Whether or not the trial court was correct in overruling the motion to dismiss filed by William R. Hill seeking to have this litigation dismissed or transferred to Monroe County asserting that Davidson County is an improper venue?

2. Whether or not the court's order dated June 6, 2005 quashing the notice to take depositions filed by the Hills was erroneous?

3. Whether or not the trial court's order of September 21, 2005 striking the counter complaint in its entirety was erroneous?

4. Whether or not the trial court's order of September 21, 2005 dismissing Suzann C. Hill as a party and dismissing her loss of consortium claim, being a derivative claim of Mr. Hill's retaliatory discharge claim, was erroneous?

5. Whether or not the trial court's order of September 21, 2005, attempting to prohibit future amendments to the counter-complaint on

behalf of Mr. Hill was [a violation] of Rule 15 of Tennessee Rules of Civil Procedure which establishes a liberal policy with regard to the allowance of amendments to pleadings and whether or not the court in pursuance of that stated policy was correct when it overruled Counter-Plaintiffs' motion to amend to allege a claim against Federated Rural Electric Insurance Exchange that it tortiously interfered with Mr. Hill's contract of employment with Fort Loudoun Electric Cooperative or that it intentionally interfered with a business arrangement between William R. Hill and Fort Loudoun Electric Cooperative?

6. Whether or not the trial court's order of January 20, 2006, staying all proceedings at the trial court level, including the workers' compensation claim of Mr. Hill, while the appeal perfected by Mrs. Hill was pending, was erroneous?

7. Whether or not the trial court was correct when it refused to grant Mr. Hill's motion for default judgment made against Federated Rural Electric Insurance Exchange and Fort Loudoun Electric Cooperative?

Venue

In the first issue on appeal, Mr. Hill contends that venue for both the Plaintiffs' Petitions alleging fraud as well as the Hills' own counter claims lies in Monroe County, Tennessee, as opposed to Davidson County, Tennessee. We disagree.

Plaintiffs filed the petition for relief in the Circuit Court at Davidson County, Tennessee in the same case where a previous settlement agreement was approved, *see supra*. The gravamen of Plaintiffs' suit is that Mr. Hill was guilty of fraudulent acts in obtaining the benefits reflected in the July 9, 2003 agreed settlement. T.C.A. § 50-6-225(a)(1), under which the Plaintiffs bring their fraud suit, and the general venue statute for transitory actions, T.C.A. § 20-4-101, both state that an action *may be brought* in a county where the claimant resides (versus where the injury occurred). Both statutes use the permissive language "may file" and "may be brought." Neither statute, however, mandates that venue be in a particular locale.

Our Supreme Court has held that, although venue is the personal privilege of the defendant to be sued in particular counties, it may be waived by a defendant who defends upon the merits without first interposing an objection to improper venue. *See Corky v. Matthews*, 541 S.W.2d 789, 791 (Tenn. 1976). Here, Mr. Hill submitted to venue in the Davidson County court by entering into an agreed settlement that was approved by that court. Plaintiffs' present action for fraud contemplates a revisiting or reconsideration of that original settlement agreement in light of the videotaped evidence. In *Freeman v. Marco Transp. Co.*, 27 S.W.3d 909 (Tenn. 2000), our Supreme Court addressed the question of venue when reconsidering a claimant's prior award made pursuant

-6-

to a settlement. In holding that venue for the claimant's new cause of action requesting reconsideration of a previous workers' compensation settlement award should be filed in the court that approved the original settlement, the Court reasoned:

> The statute employs the terms "reconsider" and "reconsideration." "Reconsider" means "to consider again," especially "with intent to modify an earlier decision." Webster's II New College Dictionary 927 (1995). Black's Law Dictionary states that "reconsideration" implies "a different decision by the entity which initially decided it." Black's Law Dictionary 1272 (6th ed.1990); cf. Lester Witte & Co. v. Pate, 158 Ga.App. 204, 279 S.E.2d 501, 502 (1981) ("reconsider" means "to consider again; to review with care, especially with a view to a reversal of previous action."). We find the language of Tenn.Code Ann. § 50-6-241 to be unambiguous. By employing the term "reconsider," it is evident that the legislature regarded a request for reconsideration brought pursuant to Tenn.Code Ann. § 50-6-241(a)(2) as a continuation of the original workers' compensation claim. Furthermore, as the defendant points out, the statutory language "application to the appropriate court" clearly indicates there is but one court in which the motion is appropriate-the court that originally heard the settlement. See 82 Am.Jur.2d Workers' Compensation § 651 (1992) (the court having jurisdiction to secure compensation is usually empowered to reopen or modify its awards); 101 C.J.S. Workmen's Compensation § 855 (1958) ("a proceeding to modify an award is not a new proceeding, but is one based on the jurisdiction of the ⋯ court acquired in the original proceeding."); see also 49 C.J.S. Judgments § 278 (1997). Thus, we conclude that a motion for reconsideration brought pursuant to Tenn.Code Ann. § 50-6-241(a)(2) must be filed in the same court that exercised jurisdiction over the original workers' compensation claim.
>
> This holding as to Tenn.Code Ann. § 50-6-241(a)(2) is consistent with this Court's approach regarding modification of workers' compensation benefits under Tenn.Code Ann. § 50-6-231 (formerly Tenn.Code Ann. 50-1025(b)). Section 231(2) . . . .

*Id.* at 912.

Although the present case does not turn on the same statute as *Freeman*, the Court's logic is equally applicable here because, as discussed above, the fraud claim requires reconsideration of the original workers' compensation settlement.

However, even if we assume, *arguendo*, that Plaintiffs' suit is not, in essence, a reconsideration, we nonetheless conclude that Mr. Hill has waived his objection to venue by filing a notice to take deposition in the Davidson County court. ***See Oakley v. Oakey***, No. 01A01-9410-CH-00506H, 1995 WL 459112 (Tenn. Ct. App., Aug. 4, 1995). (If a party makes a general appearance and does not take issue with venue, the issue of venue is waived. ***Id***. at *3.)

Quashing the Notice to Take Depositions

It is well settled that decisions regarding pre-trial discovery matters rest within the sound discretion of the trial court. The decision of the trial court in discovery matters will not be reversed on appeal unless a clear abuse of discretion is demonstrated. ***Beaton v. Snyder***, 825 S.W.2d 409 (Tenn. 1992); ***Paine v. Ramsey***, 591 S.W.2d 434, 436 (Tenn. 1979). While the "abuse of discretion" standard limits the scope of our review of discretionary decisions, it does not immunize these decisions completely from appellate review. ***Duncan v. Duncan***, 789 S.W.2d 557, 561 (Tenn. Ct. App. 1990). Even though it prevents us from second-guessing the trial court, ***White v. Vanderbilt Univ.***, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999), or from substituting our discretion for the trial court's discretion, ***Myint v. Allstate Ins. Co.***, 970 S.W.2d 920, 927 (Tenn. 1998); it does not prevent us from examining the trial court's decision to determine whether it has taken the applicable law and relevant facts into account. ***Ballard v. Herzke***, 924 S.W.2d 652, 661 (Tenn. 1996). We will not hesitate to conclude that a trial court "abused its discretion" when the court has applied an incorrect legal standard, has reached a decision that is illogical, has based its decision on a clearly erroneous assessment of the evidence, or has employed reasoning that causes an injustice to the complaining party. ***Clinard v. Blackwood***, 46 S.W.3d 177, 182 (Tenn. 2001); ***Buckner v. Hassell***, 44 S.W.3d 78, 83 (Tenn. Ct. App. 2000); ***Overstreet v. Shoney's, Inc.***, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999).

In the instant case, Mr. Hill filed a Notice to Take Depositions of Robert R. Long, CEO of Fort Loudoun, and Michelle Muller, claims Representative for Federated. Ms. Muller's residence and place of employment is in Kansas; however, Mr. Hill's notice indicates that depositions will be taken in Vonore, Tennessee. Prior to filing his Notice to Take Depositions, Mr. Hill had filed no answer, nor had he responded to any of the discovery requests filed by Plaintiffs. In light of these facts, the Plaintiffs filed a Motion to Quash, which was granted by Order of June 6, 2005. Plaintiffs take the position that the Hills seek an unfair advantage by attempting to use the discovery process for surprise and ambush in violation of Tennessee law. The Hills take the position that Plaintiffs' petition was filled with false accusations and innuendos, and that the voluminous discovery propounded by Plaintiffs (which include 38 interrogatories, 82 requests to admit, and 22 requests for production of documents) was designed as a "knock-out punch." The Hills contend that the requested depositions were necessary "[i]n order to ascertain the source of what the Hills considered misinformation and outright fabrication."

Tenn. R. Civ. P. 26.03 gives the trial court broad discretion to "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including "that discovery not be had," or "that discovery may be had only on specific terms and conditions. . . ." Although Tenn. R. Civ. P. 26.04 states that "discovery may be used in

-8-

any sequence and the fact that a party is conducting discovery, whether by deposition or otherwise, shall not operate to delay any other party's discovery," the rule does not provide an absolute right to conduct discovery in any sequence the parties desire. Rather, the rule grants the trial court power to order the discovery sequence "for the convenience of parties and witnesses and in the interests of justice." Here, it appears that the trial court has done just that. Given the fact that Mr. Hill had not answered the petition or the discovery requests and the fact that Mr. Hill requested to depose an out-of-town witness in East Tennessee, we cannot conclude that the trial court abused its discretion or otherwise violated the rules of discovery in quashing Mr. Hill's Notice to Take Depositions.

Striking Counter Complaint

In response to Plaintiffs' Motion to Dismiss the Hills' Counter-Complaint, the trial court did so by Order of September 21, 2005. Specifically, the trial court struck and dismissed the tort of bad faith based upon Mr. Hill's acknowledgment "that there is no valid tort of bad faith . . . ." The trial court dismissed Mr. Hill's claim of intentional infliction of emotional distress and/or outrageous conduct on the grounds that same is "barred by the exclusive remedy provisions of the Tennessee Workers' Compensation Act, T.C.A. § 50-6-108," and that the Counter-Complaint "failed to assert the elements . . . necessary to pursue such tort claims . . . ." The trial court also dismissed any and all claims asserted by Mrs. Hill because her "claims fail to generate a claim upon which relief can be granted," and because "[h]er tort claims are barred by the exclusive remedy provisions of the Tennessee Workers' Compensation Act and the damages she seeks are not damages which she may recover under retaliatory discharge or otherwise. . . ." The trial court also ordered Mr. Hill to produce a new Counter-Complaint that complied with Tennessee law and which specifically contain "only claims under the Tennessee Workers' Compensation Act and for retaliatory discharge." Furthermore, the trial court instructed Mr. Hill to comply with the Tennessee Rules of Civil Procedure by setting forth a more definite statement pursuant to Tenn. R. Civ. P. 12.05, and setting forth a short and plain statement of the claim as contemplated by Tenn. R. Civ. P. 8.01.

On appeal, the Hills assert that the trial court erred in dismissing their respective causes of action. We will address each of the causes of action set out in the Counter-Complaint in order to determine whether the trial court abused its discretion in dismissing any or all of these causes of action.

We first address a technicality, which the Hills raise in their brief. The Hills contend that the trial court abused Tenn. R. Civ. P. 12.06 by "striking" the entire Counter-Complaint. Specifically, the Hills assert that, "while applying [Tenn. R. Civ. P.] 12.06 to the Counter-Complaint it does not lead one to the conclusion that the entire Counter-Complaint should have been stricken." While we concede that "[o]rdinarily, a motion to strike is not the proper vehicle by which to strike an entire pleading," *Curve Elementary School v. Lauderdale Cty. School*, 608 S.W.2d 855, 857 (Tenn. Ct. App. 1980) (citations omitted), Tenn. R. Civ. P. 12.06 may be used to "eliminate an entire pleading, including a complaint, where its allegations are offensive, scurrilous or in gross violation of Rule 8, Tennessee Rules of Civil Procedure." *Id.* (citations omitted). Although the trial court's September 21, 2005 Order states that "[t]he Plaintiff's Motion to Strike is well taken and granted,"

-9-

a closer reading of the substantive paragraphs of the Order indicates that the trial court was, in fact, applying Tenn. R. Civ. P. 12.02 (6) - "failure to state a claim upon which relief can be granted" - in *dismissing*, with prejudice, the Hills' causes of actions. We will, therefore, review the trial court's decision under Tenn. R. Civ. P. 12.02 (6).

A motion to dismiss pursuant to Tenn.R.Civ.P. 12.02(6) for failure to state a claim upon which relief can be granted is the equivalent of a demurrer under our former common law procedure and thus is a test of the sufficiency of the leading pleading. *See Cornpropst v. Sloan*, 528 S.W.2d 188, 190 (Tenn.1975). The motion admits the truth of all relevant and material averments in the complaint but asserts that the statements do not constitute a cause of action. See id. at 190. In considering whether to dismiss a complaint for failure to state a claim, the court should construe the complaint liberally in favor of the plaintiff, taking all of the allegations of fact therein as true. *See Huckeby v. Spangler*, 521 S.W.2d 568, 571 (Tenn.1975). A complaint should not be dismissed upon such a motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Fuerst v. Methodist Hospital South*, 566 S.W.2d 847, 848 (Tenn.1978). Obviously, we are limited to an examination of the complaint alone, thus the factual material in the opinion is taken solely from the complaint.

Mr. Hill's Causes of Action

T.C.A. § 50-6-108 states, in relevant part:

> (a) The rights and remedies granted to an employee subject to the Workers' Compensation Law, compiled in this chapter, on account of personal injury or death by accident, including a minor whether lawfully or unlawfully employed, shall exclude all other rights and remedies of such employee, such employee's personal representative, dependents or next of kin, at common law or otherwise, on account of such injury or death.

Under Tennessee workers' compensation law, employers are required to pay compensation for an employee's personal injury or death by accident arising out of and in the course of employment. The employee's remedies under the workers' compensation statutes are exclusive. T.C.A. § 50-6-108. Consequently, an employee who is injured in an accident during the course of his or her employment may recover only workers' compensation benefits from his or her employer; the statute bars the employee from filing a personal injury lawsuit for damages against the employer. *See Valencia v. Freeland and Lemm Const. Co.*, 108 S.W.3d 239, 242 (Tenn. 2003). "[I]n general, workers' compensation laws involve a *quid pro quo* in that workers give up certain common law rights against their employers in return for a system providing more certain compensation, totally independent of any fault on the part of the employer." *Perry v. Transamerica Ins. Group*, 703 S.W.2d 151 (Tenn. Ct. App. 1984) (citations omitted). Consequently, it appears that the trial court did not err in holding that Mr. Hill's causes of action were barred by the exclusive remedy provision of the Workers' Compensation Act, *supra*.

However, even if we assume, *arguendo,* that Mr. Hill's claim of intentional infliction of emotional distress and/or outrageous conduct could proceed in the face of the authority outlined above, we nonetheless conclude that Mr. Hill's Counter-Complaint fails to set out a *prima facie* case for this tort. We first note that intentional infliction of emotional distress and outrageous conduct are simply different names for the same cause of action, which has three essential elements: (1) the conduct complained of must be intentional or reckless, (2) it must be so outrageous that it is not tolerated by a civilized society, and (3) it must result in serious mental injury. *See Bain v. Wells*, 936 S.W.2d 618 (Tenn. 1997). The actionable conduct under this theory must be set out in the pleadings. *Medlin v. Allied Inv. Co.*, 217 Tenn. 469, 398 S.W.2d 270 (Tenn. 1966). Furthermore, the actionable conduct should be set out in the complaint describing the substance and severity of the conduct that is alleged to be outrageous. *Braswell v. Carothers*, 863 S.W.2d 722 (Tenn. Ct. App.1993). In *Medlin v. Allied Inv. Co.,* our Supreme Court addressed the question of what constitutes outrageous conduct and held as follows:

> These factors are set out in the Restatement of Torts (2d), § 46, 'Outrageous Conduct Causing Severe Emotional Distress'.
>
> > (1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm results from it, for such bodily harm.
>
> Clarification of this statement is found in the following comment:
>
> > d. Extreme and Outrageous Conduct. The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct is characterized by 'malice', or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly untolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous.

*Medlin*, 398 S.W.2d at 274.

Turning to the Counter-Complaint, in support of his claim for intentional infliction of emotional distress, Mr. Hill avers:

> I. That on May 2, 2005, the Counter-Defendants, through a coordinated and joint plan, filed the original claim in this case . . . based on the false premise that WILLIAM R. HILL had fraudulently misrepresented the condition of his right knee in order to fraudulently obtain workers' compensation benefits, and which further falsely claimed that WILLIAM R. HILL claimed that he could not perform light, sedentary work on February 15, 2005, which information the Counter-Defendants knew at the time they filed this litigation was false. In addition to filing the above-described action, which was filed with false innuendos and outright false statements, the Counter-Defendants included in their plan the firing of Mr. Hill on that same date. In addition to the filing of the suit and firing of Mr. Hill, these parties attached to their joint law suit Interrogatories, Requests to Admit and Request for Production of Documents, which were calculated to insult and incense the Counter-Plaintiffs with the full knowledge that the Counter-Plaintiff WILLIAM R. HILL was already undergoing treatment for depression brought on by the years of reoccurring pain, ten (10) surgeries, including a total knee replacement surgery of the left knee, all arising out of workers' compensation injuries. Counter-Plaintiffs aver that the actions of these Counter-Defendants were taken for the purpose of intentionally inflicting emotional harm on both of the Counter-Plaintiffs . . . as well as their good name in the community . . . . Counter-Plaintiffs would further show that the Counter-Defendants were successful in that this litigation, coupled with the firing, has caused the emotional harm intended, making it necessary for the Counter-Plaintiffs to expend sums to obtain additional medical treatment for depression, which depression deepened seriously as a result of the malicious actions taken by the Counter-Defendant, including the flood of false statements contained in the pleadings coupled with the firing of Mr. Hill. The Counter-Plaintiffs have worked in their community, their church and their respective places of employment for nearly three (3) decades and have strived to set examples for their children and their peers in the way they have conducted themselves, and to have such false and malicious allegations made by the Counter-Defendants, contemporaneously with the firing of Mr. Hill, was most traumatic and caused emotional pain, anguish, and great stress. Counter-Plaintiffs would further aver that these actions of the Counter-Defendants were

done deliberately and for the singular and selfish motive of saving money for these two (2) Counter-Defendants. For all of which the Counter-Plaintiffs sue the Counter-Defendants, both jointly and severally, for the sum of One Million Dollars ($1,000,000.00).

The alleged actionable conduct is not set out in the pleadings, *see Medlin v. Allied Inv. Co.*, 217 Tenn. 469, 398 S.W.2d 270 (Tenn. 1996). Moreover, taking the allegations as true and construing them liberally in favor of Mr. Hill, *Cook Uithoven v. Spinnaker's of Rivergate, Inc.,* 878 S.W.2d 934 (Tenn. 1994), we nonetheless conclude that these pleadings do not constitute "conduct that is so outrageous that it is not tolerated by a civilized society." *Bain v. Wells*, 936 S.W.2d at 622.

Mr. Hill's claim for retaliatory discharge was also dismissed by the trial court. A cause of action for discharge in retaliation for asserting a workers' compensation claim has four elements: (1) the plaintiff was an employee of the defendant at the time of the injury; (2) the plaintiff made a claim against the defendant for workers' compensation benefits; (3) the defendant terminated the plaintiff's employment; and (4) the claim for workers' compensation benefits was a substantial factor in the employer's motivation to terminate the employee's employment. *Anderson v. Standard Register Co.*, 857 S.W.2d 555, 558 (Tenn. 1993). "The burden of proof rests . . . upon the plaintiff to prove the elements of the cause of action, including a causal relationship between the claim for workers' compensation benefits and the termination of employment." *Id.* at 558. It is well-settled that termination without any evidence of a causal link to the workers' compensation claim is insufficient to prove retaliatory discharge. *Id*. When an employee is discharged for reasons other than for exercising rights under the Workers' Compensation Act, then the causation element of the employee's *prima facie* case of retaliatory discharge is precluded, and his or her action must fail.

In the instant case, Mr. Hill's Counter Complaint avers as follows concerning the alleged retaliatory discharge:

> The Counter-Plaintiffs allege that the Counter-Defendants' actions constitute a retaliatory discharge of the Counter-Plaintiff WILLIAM R. HILL, that his firing was the result of his having a workers' compensation claim which would require, among other things, the payment by Counter-Defendants for the cost of a right total knee replacement surgery, along with the rehabilitation expenses, as well as surgical repairs to the left artificial knee and temporary total disability benefits during the time period required for the surgery and rehabilitation, all of which has been known for years by these Counter-Defendants to be required as his treating physicians have so indicated as early as the year 2000, which costs would likely exceed $100,000.00.
>
> III. Comes the Counter-Plaintiffs and sue the Counter-Defendants for additional cause of action and say that the factual

allegations contained in Count I and II are incorporated into this Count as if they were fully copied verbatim at this point. In addition to and separate and apart from the compensatory damage claim set forth in Count II, Counter-Plaintiff WILLIAM R. HILL is entitled to be awarded punitive or exemplary damages against these Counter-Defendants for the wrongful discharge on May 2, 2005 of Counter Plaintiff WILLIAM R. HILL, which action was taken as a part of a common plan by the Counter-Defendants. Counter-Plaintiff WILLIAM R. HILL would show that FORT LOUDOUN ELECTRIC COOPERATIVE has a net value in the tens of millions of dollars, the exact amount of which will be shown to the Court and jury, and that the Counter-Defendant FEDERATED RURAL ELECTRIC INSURANCE EXCHANGE has a much higher net value than FORT LOUDOUN ELECTRIC COOPERATIVE, which value will be shown to the Court and jury. Counter-Plaintiff avers that the actions of these Counter-Defendants are willful, calculating and malicious, and that in order to prevent these two (2) Counter-Defendants from treating other employees in a similar fashion, the Counter-Plaintiff demands a judgment for punitive or exemplary damages in such an amount as the jury might fix to deter the Counter-defendants from such a course of action in the future.

Although the majority of Mr. Hill's allegations are conclusory, he does allege that he made a workers' compensation claim and that he was discharged because he made such a claim. He also alleges that this was motivated in part by the Plaintiffs' desire to save money, because the termination of his employment would prevent the future payment of medical bills which they had heretofore agreed to. In any event, Mr. Hill has barely proved his position sufficiently, but we must give every benefit of the doubt to the non-movant in a 12.02(6) motion. Accordingly, we will reverse the trial court's dismissal of the of the Counter-Complaint and retaliatory discharge. We do this with the understanding that this, in no way, prevents a motion to strike for irrelevant or otherwise scurrilous allegations in the complaint, nor does this prevent the filing of a summary judgment motion on the part of Plaintiffs.

Mrs. Hill's Causes of Action

As discussed above, Mr. Hill sought to add his wife as a counter-plaintiff, asserting loss of consortium claims and derivative tort claims arising from the alleged tort claims of Mr. Hill. Because we have determined that the trial court correctly dismissed Mr. Hill's causes of action, any derivative claims made by Mrs. Hill must necessarily fail. Concerning Mrs. Hill's loss of consortium claim, our Supreme Court has held that loss of consortium is "'a separate claim from that of an injured spouse.'" *Tuggle v. Allright Parking Sys.*, 922 S.W.2d 105, 108 (Tenn. 1996)(quoting *Jackson v. Miller*, 776 S.W.2d 115, 117 (Tenn. Ct. App. 1989)). However, a spouse's loss of consortium claim exists only against a third-party tortfeasor. *Hanley v. Silver Furniture Mfg. Co.*, 38 S.W.3d 555, 558 (Tenn.

-14-

2001). An employee's spouse has no right to bring suit against the employer for loss of consortium. *Napier v. Martin*, 250 S.W.2d 35, 36 (Tenn. 1952). Consequently, the trial court was correct in dismissing both the loss of consortium claim and the derivative claims raised by Mrs. Hill.

## Alleged Violation of Tenn. R. Civ. P. 15

Tenn. R. Civ. P. 15.01 provides that the pleadings in a lawsuit may be amended "once as a matter of course at any time before a responsive pleading is served." Otherwise, amendment may be made only "by written consent of the other party or by leave of the court." The rule provides that permission to amend should be liberally granted; however, where a motion to amend is filed after a responsive pleading has been filed, the grant or denial of the motion is within the sound discretion of the trial court. Such discretionary decisions may not be reversed on appeal, absent a showing of abuse of discretion, *McKinney v. Educator & Executive Insurers, Inc.*, 569 S.W.2d 829, 833 (Tenn. Ct. App. 1978); or where failure to allow an amendment will result in injustice. *Wilson v. Riccardi*, 778 S.W.2d 450, 453 (Tenn. Ct. App. 1989); *Hopper v. Davidson County*, 333 S.W.2d 917, 920 (Tenn. 1960).

In his motion to amend the first amended Counter-Complaint, Mr. Hill seeks to amend the Counter-Complaint to allege that Federated "tortiously interfered with an employment contract between [Fort Loudoun] and [Mr. Hill]." In his motion, Mr. Hill further alleges that Federated "deliberately set out on a course of action to interfere with that relationship [i.e., the relationship between Fort Loudoun and Mr. Hill] and to induce [Fort Loudoun] to terminate [Mr. Hill's employment] in order that [Federated] could avoid the payment of workers' compensation benefits. . . ."

After reviewing the proposed amendments, we perceive that Mr. Hill has failed to state a claim for either procurement of breach of contract or tortious interference with an employment contract.

## Procurement of Breach of Contract

In order to recover for procurement of breach of contract, a plaintiff must prove seven elements: (1) there must be a legal contract; (2) the wrongdoer must have knowledge of the existence of the contract; (3) there must be an intention to induce its breach; (4) the wrongdoer must have acted with malice; (5) there must be a breach of contract; (6) the act complained of must be the proximate cause of the breach of contract; and (7) there must have been damages resulting from the breach of contract. *Buddy Lee Attractions, Inc. v. William Morris Agency, Inc.*, 13 S.W.3d 343, 354-55 (Tenn. Ct. App. 1999); T.C.A. § 47-50-109.

It is uncontested that Mr. Hill was an at-will employee of Fort Loudoun. As such, Mr. Hill had no employment contract with Fort Loudoun. Absent a legal contract, there can be no inducement to breach same. The trial court correctly denied Mr. Hill's request to add this cause of action.

Tortious Interference with an Employment Contract

A plaintiff may bring a claim for intentional interference with an at-will employment relationship. In such a claim, the plaintiff must provide specific proof that the defendant committed *per se* wrongful acts or committed lawful acts with malice and without justification. **Forrester v. Stockstill**, 869 S.W.2d 328, 335 (Tenn. 1994). The **Forrester** Court outlined three factors to be discussed in evaluating tortious interference claims: (1) whether the person intended to interfere with the plaintiff's employment; (2) whether the defendant interfered with the plaintiff's employment by such methods as intimidation, defamation, or violence; and (3) whether the purpose or motive for interfering was based solely on a desire to harm the plaintiff. **Id.** at 333-34.

In the instant case, there is no indication that Federated sought to have Mr. Hill fired or that the termination of Mr. Hill's employment worked any benefit to Federated. There is no indication in the record that Federated has failed to comply with the Agreed Order of July 9, 2003. Rather, Federated is bound by that agreement, regardless of Mr. Hill's employment status.

Furthermore, there is no actual proof that Federated had any hand in the termination of Mr. Hill's employment. It appears that Fort Loudoun chose to terminate Mr. Hill's employment only after he was caught on videotape vigorously using the knees he claimed were too painful to perform even a desk job. Plaintiffs set out in the termination letter that it was the videotaped evidence that provided the basis for terminating Mr. Hill's employment due to dishonesty and violation of company policy, to wit:

> This letter is in response to the meeting I had with you on Friday, April 29, 2005. At the meeting you were given the opportunity to share with me your explanation and reasons for choosing to construct a barn while off from work with physical restrictions imposed upon you by your physician, due to your workers' compensation injury. Your actions and dishonesty were a definite infraction of FLEC's Board Policy 201A rules of conduct and performance. After hearing your explanation and after careful consideration of all of the information, I have no choice but to terminate your employment with Fort Loudoun Electric Ooperative effective immediately.

Consequently, the trial court did not err in disallowing this cause of action.

Although Mr. Hill alleges that the trial court's Order of September 21, 2005 attempts to prohibit future amendments to his Counter-Complaint in violation of Tenn. R. Civ. P. 15, a review of the order reveals no such prohibition. Rather, the court orders Mr. Hill to fashion a Counter-Compliant that complies with Tenn. R. Civ. P. 8.01 and 12.05. There is no prohibition on Mr. Hill's amending his Counter-Complaint to allege any viable claims. However, as discussed above, the proposed claims are not viable and, therefore, the trial court was correct in disallowing same.

Stay of Proceedings

In its February 13, 2006 Order, the trial court stayed all litigation pending the ruling of this Court. The trial court reasoned that our ruling "could affect the parties, the claims, the legal theories and the damages. . . ." The decision to stay a proceeding is a matter of discretion with the trial court, and, on appeal, a party taking issue with that decision has the burden to show that the court abused its discretion. *Rachels v. Steele*, 633 S.W.2d 473 (Tenn. Ct. App. 1981). The decision of the trial court will not be disturbed on appeal unless it is clear from the record that there was an abuse of discretion. *Id.* at 475.

Turning to the facts of this case, the Hills' appeal involves numerous claims that were not allowed by the trial court. The trial court correctly notes that this Court's decision bears upon the substantive claims that may be allowed to proceed. As a result, to continue with the litigation would likely result in undue expense and wasted time in pursuing claims that are not proper. Consequently, the trial court did not abuse its discretion in staying the proceeding below pending the outcome of this appeal.

<u>Default Judgment</u>

The trial court has broad discretion in determining whether a grant of default judgment is proper. The failure to grant a default judgment will not be reversed on appeal absent an abuse of discretion. *See, e.g., Henson v. Diehl Machines, Inc.*, 674 S.W.2d 307 (Tenn. Ct. App. 1984).

In the instant case, Mr. Hill's motion for default judgment for failure to answer was quickly followed by Plaintiffs' motion to dismiss, *see supra*. The trial court denied the motion for default judgment until it had an opportunity to rule on the motion to dismiss. Given the facts of this case, the trial court's decision does not constitute an abuse of discretion.

The order of the trial court dismissing the Counter-Complaint on the retaliatory discharge cause of action is reversed. The order of the trial court in all other respects is affirmed. Costs of this appeal are assessed against the Appellants, William R. Hill and Suzann C. Hill, and their surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.